# Matter of M-A-F- et al., Respondents

*Decided August 21, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where an applicant has filed an asylum application before the May 11, 2005, effective date of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302, and, on or after that date, submitted a subsequent application that is properly viewed as a new application, the later filing date controls for purposes of determining the applicability of section 208(b)(1)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(iii) (2012), to credibility determinations.

(2) A subsequent asylum application is properly viewed as a new application if it presents a previously unraised basis for relief or is predicated on a new or substantially different factual basis.

(3) Where an alien has filed more than one application for asylum and the subsequent one is deemed to be a new application, the filing date of the later application controls for purposes of determining whether the 1-year statutory time bar applies under section 208(a)(2)(B) of the Act.

FOR RESPONDENTS: Manpreet Singh Gahra, Esquire, Berkeley, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kathleen W. Taylor, Assistant Chief Counsel

BEFORE: Board Panel: GUENDELSBERGER and MALPHRUS, Board Members; GELLER, Temporary Board Member.

MALPHRUS, Board Member:

This case was last before us on November 5, 2012, when we dismissed the respondents' appeal from an Immigration Judge's decision, effective on March 16, 2011, denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondents filed a petition for review with the United States Court of Appeals for the Ninth Circuit, which has remanded

the record to the Board. The record will be remanded to the Immigration Judge for further proceedings.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Pakistan who was admitted to the United States as a nonimmigrant visitor for business on October 11, 2000, with authorization to remain until November 10, 2000. On February 26, 2003, the respondent filed an Application for Asylum and Withholding of Removal (Form I-589) and a five-page written declaration with the former Immigration and Naturalization Service ("INS"). He subsequently appeared for an interview with an asylum officer. On May 20, 2005, the Department of Homeland Security ("DHS") served the respondent with a notice to appear for removal proceedings. At a hearing on May 4, 2006, he conceded removability as an overstayed nonimmigrant and filed a second Form I-589.

During his testimony, the respondent acknowledged that his first application contained a name and birth date somewhat different from his own. He also admitted that the application contained inaccurate statements indicating that he was arrested five times on specific occasions based on his participation in rallies or protests involving the Pakistan Peoples Party ("PPP"). The respondent also claimed in that application that he had been held for certain specific periods of time ranging from 6 days to 2 months and that he was tortured by various specific means during those detentions.[2] By contrast, in his 2006 application, the respondent stated that he had participated in two PPP protests but evaded arrest both times, and he made no claim that he was ever detained or tortured.

In her decision, the Immigration Judge found that the respondent was ineligible for asylum because his application was not timely filed within

---

[1] The lead respondent's wife and son, who are derivatives of his application, also filed independent asylum applications. They concede that they are not eligible for asylum based on those applications because they were not timely filed. Since we are remanding the record, we need not resolve any issues related to their applications at this time. Our decision will therefore focus on the claims of the lead respondent, whom we will refer to as "the respondent."

[2] The falsity of the application came to light pursuant to a DHS investigation of a person who assisted the respondent in the preparation of his 2003 asylum application and acted as a translator during his interview. That person was eventually convicted for his role in preparing false asylum applications. At the respondent's hearing, the DHS presented testimony from the officer who investigated the individual, as well as that of the asylum officer who interviewed the respondent. The Immigration Judge found these witnesses to be credible.

a year of his arrival, as required by section 208(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(B) (2006), and his untimely filing was not excused by changed or extraordinary circumstances pursuant to section 208(a)(2)(D). The Immigration Judge evaluated the credibility of the respondent's claims for withholding of removal and protection under the Convention Against Torture pursuant to the provisions of section 208(b)(1)(B)(iii) of the Act, which were enacted by the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302 ("REAL ID Act"). In doing so, she considered the respondent's filing date to be that of his second application in 2006, relying on *Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006), which held that the REAL ID Act amendments apply to applications filed after May 11, 2005. Applying these provisions, the Immigration Judge found that the respondent's claim was not credible.

We dismissed the respondent's appeal from that decision, agreeing that the REAL ID Act applied to the respondent's claims and upholding the Immigration Judge's adverse credibility determination. We alternatively determined that the adverse credibility finding would stand under the law that was applicable prior to the REAL ID Act. We did not reach the question whether the respondent was ineligible for relief because his asylum application was untimely filed.

The Ninth Circuit has remanded the record for us to further consider, among other issues, the filing date of the respondent's asylum application for purposes of determining (1) whether the REAL ID Act applies, and (2) whether his application was statutorily barred as untimely filed. The DHS requests that we make determinations regarding these two issues and remand the record to the Immigration Judge. The respondent has submitted no response to the DHS's request. We conclude that the respondent's claim for relief is subject to the provisions of the REAL ID Act and that the date of his second asylum application is determinative of whether his asylum application was timely filed.[3]

## II. ANALYSIS

### A. Application of the REAL ID Act

The REAL ID Act amended the statute by adding the provisions of section 208(b)(1)(B)(iii) of the Act, which specify the factors to be

---

[3] We review the Immigration Judge's findings of fact, including those relating to credibility, to determine if they are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2015). We review de novo all other questions of law, discretion, and judgment, including whether the parties have met the relevant burden of proof. 8 C.F.R. § 1003.1(d)(3)(ii).

considered in making a credibility determination. *See* REAL ID Act § 101(a)(3), 119 Stat. at 303; *see also* sections 240(c)(4)(C), 241(b)(3)(C) of the Act, 8 U.S.C. §§ 1229a(c)(4)(C), 1231(b)(3)(C) (2012). This provision applies to asylum applications that were filed on or after May 11, 2005, whether filed initially before an asylum officer or an Immigration Judge. REAL ID Act § 101(h)(2), 119 Stat. at 305 (providing that the changes to the Act "shall apply to applications for asylum, withholding, or other relief from removal made on or after" the May 11, 2005, date of enactment); *see also Matter of S-B-*, 24 I&N Dec. at 43.

The respondent submitted two asylum applications. The first was affirmatively filed with the former INS in 2003, and the other was defensively filed in removal proceedings before the Immigration Judge in 2006. The initial question before us is whether the REAL ID Act's credibility provisions apply to the respondent's current claims. *See Shrestha v. Holder*, 590 F.3d 1034, 1039−45 (9th Cir. 2010) (discussing credibility determinations under the REAL ID Act); *see also Li Hua Yuan v. Att'y Gen. of U.S.*, 642 F.3d 420, 425 n.9 (3d Cir. 2011) ("Whether the REAL ID Act applies can be significant because it imposes certain conditions upon asylum applicants regarding credibility and corroboration evidence.").

The Immigration Judge found that the respondent's application that was filed before her was subject to the provisions of the REAL ID Act. The respondent argues that this 2006 filing was an amended or renewed application and therefore is not subject to the REAL ID Act. According to the DHS, the REAL ID Act does apply because the respondent's first asylum application was fraudulent and was replaced by the second application, which was not simply an amendment to his initial filing.

The regulations state that an asylum officer or Immigration Judge may permit an asylum applicant "to amend or supplement" the application upon request of the alien and as a matter of discretion. 8 C.F.R. §§ 208.4(c), 1208.4(c) (2015). However, the regulations do not address whether such a supplemented or amended application should be considered a separate filing for purposes of determining if the REAL ID Act applies. One possible interpretation could be that the REAL ID Act provisions apply to any asylum application filed "on or after" the May 11, 2005, effective date, making such an application subject to the REAL ID Act, regardless of its similarity to a previous one. However, given that the regulations allow for the amendment of an application, we believe that the key consideration in determining if the REAL ID Act applies should be whether the later application is essentially a new one, rather than an amendment or supplement to the original application.

We find support for this position in *Li Hua Yuan*, 642 F.3d 420, where the court found that the REAL ID Act would apply to an asylum application submitted in reopened proceedings in July 2005, even though the respondent had previously filed an application that was denied in 2002. The court held that the second application "raises a new basis for asylum following a motion to reopen and so is a new application rather than a continuation of the initial one." *Id.* at 425 n.9.

To determine whether a second or subsequent asylum application is "new" and thus subject to the REAL ID Act, we must examine the specific facts and circumstances of each filing. A later filed application that presents a previously unraised basis for relief—such as a fear of persecution on account of a different protected ground—will generally be considered a new application. Even an application that is based on the same protected ground may also be considered a new application if the alien's later claim is predicated on a new or substantially different factual basis. By contrast, a subsequent application that merely clarifies or slightly alters the initial claim will generally not be considered a new application.

The respondent filed an asylum application in 2003, which he admitted, and the Immigration Judge found, was based on a false narrative that he had been arrested following his participation in PPP rallies or protests and was detained five times for periods ranging from 6 days to 2 months, during which detentions he had been tortured. Unlike the initial application, the respondent's second application, filed in 2006, made no claim that he had been arrested, detained, or tortured. Thus, while the second application was based on the same protected ground, the facts presented there are substantially different from those in the earlier application. The second application did not simply correct minor errors or omissions present in the existing claim. It was not "a continuation of the initial one." *Li Hua Yuan v. Att'y Gen. of U.S.*, 642 F.3d at 425 n.9. Rather, the 2006 filing effectively substituted a new claim for the original one. Under these circumstances, the second application did not supplement or amend the initial application and was, instead, properly viewed as a new application.

We conclude that an alien should not be able to bypass the credibility provisions of the REAL ID Act simply because he or she filed an earlier application. This is particularly true here because the respondent's initial application contained false information, including details of specific incidents of arrest and torture that were central to his original claim but were not included in his later application. We therefore agree with the Immigration Judge that the credibility provisions of the REAL ID Act apply to the respondent's current claim.

Where an applicant's initial asylum application was filed before May 11, 2005, and a second or subsequent one was submitted on or after

that date, the filing date of the later application controls if it is properly viewed as a new one. We emphasize, however, that the filing of a second application after May 11, 2005, alone will not always trigger the application of the REAL ID Act provisions. Rather, each case depends on its own facts and circumstances.

### B. Timeliness of an Asylum Application

Section 208(a)(2)(B) of the Act provides that an alien is not eligible to apply for asylum unless he or she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." However, an application may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period." Section 208(a)(2)(D) of the Act; *see also, e.g.*, *Vahora v. Holder*, 641 F.3d 1038, 1042−48 (9th Cir. 2011); *Sagaydak v. Gonzales*, 405 F.3d 1035, 1039−41 (9th Cir. 2005); *Matter of A-M-*, 23 I&N Dec. 737, 738−39 (BIA 2005); 8 C.F.R. §§ 208.4(a)(4), (5), 1208.4(a)(4), (5).

The respondent entered the United States on October 11, 2000, and filed his first asylum application on February 26, 2003. Although the Immigration Judge stated that she "agreed to consider" this the filing date for purposes of determining whether the statutory time bar applies, we conclude that the determinative date is May 4, 2006, when the respondent filed his second asylum application, given that this application is deemed to be a new one.

In *Dhital v. Mukasey*, 532 F.3d 1044, 1049 (9th Cir. 2008), the Ninth Circuit agreed with our conclusion that because the alien had initially filed a fraudulent asylum application, the date of his second application controlled in determining whether a subsequent application with a new claim was timely filed. In that case, the applicant had been granted asylum under a fraudulent identity and reapplied for asylum after being placed in removal proceedings under his true identity.

Similarly, the respondent in this case applied for asylum under a false factual predicate and then submitted a new asylum application before the Immigration Judge after being placed in proceedings. Consistent with the Ninth Circuit's analysis in *Dhital v. Mukasey*, we conclude that the date of the respondent's second asylum application is the relevant date for purposes of determining whether the 1-year statutory bar applies. Because the respondent submitted his application on May 4, 2006, almost 6 years after his arrival in the United States, it was not timely filed. Therefore, his asylum claim is statutorily barred unless he can show either "changed

circumstances" or "extraordinary circumstances" to excuse the untimeliness of his application.  8 C.F.R. § 1208.4(a)(4), (5).  The Immigration Judge should further address this issue on remand.[4]

## III.  CONCLUSION

The respondent's second asylum application is a new application because it was predicated on a substantially different factual basis.  Since that application was filed after May 11, 2005, the provisions of the REAL ID Act apply, including those relating to credibility.  The date the second asylum application was filed is controlling in determining the timeliness of the respondent's application for relief.  Because that application was submitted almost 6 years after the respondent's arrival in the United States, it was not timely filed unless he can establish an exception to the 1-year filing requirement.  The record will be remanded for further consideration of this and any other remaining issues, including those noted in the Ninth Circuit's order.

**ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing order and for the entry of a new decision.

---

[4]   We note that the Immigration Judge found that the respondent's 2003 application was not timely filed and that no extraordinary circumstances excused the delay in filing. *See* 8 C.F.R. § 1208.4(a)(5).  On appeal, the DHS argued that the Immigration Judge made erroneous findings of fact in her determination, including those regarding when the respondent first made contact with his second attorney, who he claims rendered ineffective assistance of counsel.  Since the record will be remanded, we will not evaluate this matter further.  The Immigration Judge should consider this argument and make further factual findings and legal determinations, as appropriate.