In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2212

BAYANMUNKH DARINCHULUUN,

*Petitioner*,

*v.*

LORETTA E. LYNCH,* Attorney
General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A088-703-777

ARGUED JANUARY 7, 2015 — DECIDED OCTOBER 8, 2015

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Bayanmunkh Darinchuluun filed an application for asylum in which he claimed that he had been persecuted in his native Mongolia as a result of his attempts

---

* We substitute Loretta E. Lynch, the current Attorney General of the United States, as the Respondent in this action. *See* Fed. R. App. P. 43(c).

to bring to light an illegal smuggling operation. Following a hearing, an immigration judge ("IJ") found that Mr. Darinchuluun was credible, but that he had failed to of-fer sufficient corroborating evidence to substantiate his claims. The Board of Immigration Appeals ("BIA") similarly denied Mr. Darinchuluun relief and also denied his request for a remand so that he could supplement the administrative record.

The record supports the conclusion that Mr. Darin-chuluun did not provide evidence that corroborated the key elements of his claim. Mr. Darinchuluun also did not meet his burden of establishing that the supplemental evidence could not have been obtained prior to his merits hearing. We therefore deny the petition for review.

# I

## BACKGROUND

### A.

Mr. Darinchuluun is a resident and citizen of Mongolia. He is married and has one son; both his wife and son still live in Mongolia. At his removal hearing, he testified to the following events.

Mr. Darinchuluun studied at a railroad college in Mon-golia and later was employed by a railroad in the capital of Ulaanbaatar. The railroad, which Mr. Darinchuluun de-scribed as a "private company,"[1] was a joint venture be-

---

[1] A.R. at 150.

tween Russia and Mongolia. His employment duties included receiving and reviewing cargo that entered the city by rail. Mr. Darinchuluun worked for the railroad for six years, ending in 2006.

The events that prompted Mr. Darinchuluun to leave Mongolia began in 2004. In November 2004, Mr. Darinchuluun discovered guns and ammunition in a box that was supposed to contain coal. On that same day, Mr. Darinchuluun was approached on the railroad platform by an unknown individual; that individual instructed Mr. Darinchuluun not to say anything about the illegal cargo. At the end of his shift that day, several men forced Mr. Darinchuluun into a car and threatened him with harm if he revealed the contents of the box.

The illegal shipments continued and, in January 2005, Mr. Darinchuluun reported them to his supervisor to no avail. A few months later, approximately ten young men attacked Mr. Darinchuluun in the hallway of his apartment building. One inquired whether Mr. Darinchuluun was involved in something that was "not relevant to [him]."[2] When Mr. Darinchuluun responded that he did not know what his attacker was referring to, he was beaten. Mr. Darinchuluun suffered a broken arm and two other broken bones as a result of the attack. He was hospitalized for twenty days. Mr. Darinchuluun did not provide any medical records regarding his hospitalization or injuries.

Sometime in February 2006, Mr. Darinchuluun reported the illegal shipments to the Russian director of the railroad, a

---

[2] *Id.* at 174.

man by the name of Magdei. On August 15, 2006, Mr. Darinchuluun had a second conversation with Magdei; later that day, Mr. Darinchuluun was stabbed in the back as he was entering his apartment building. He described his injuries as severe, and he remained in the hospital recuperating for approximately one month. Mr. Darinchuluun provided medical documentation of an injury and hospitalization, but the description of the injury was cryptic, stating: "He was knitted into his left hollow and vein and nerve was broke. He made surgery."[3] The document further noted that he was "diseased since August 14, 2006 to August 24, 2006."[4]

In October 2006, Mr. Darinchuluun and Magdei inspected a shipment of illegal cargo with the police, who confiscated the goods. Shortly after this took place, Magdei died. Although Mr. Darinchuluun believed that Magdei was murdered, a newspaper account of his death reported that Magdei was on a fishing trip when he and his companion died of accidental carbon monoxide poisoning from a heater. The article reported that there was no evidence of foul play.

Magdei's death prompted Mr. Darinchuluun to leave Mongolia for Switzerland on October 22, 2006. Mr. Darinchuluun traveled to Switzerland on a student visa, but he testified that his true intent was to apply for asylum there. He did not do so, however, because he returned to Mongolia after receiving news that his father had been attacked and hospitalized. Mr. Darinchuluun maintains that his father

---

[3] *Id.* at 266.

[4] *Id.*

was attacked as a result of voicing complaints to the Ministry of Justice about his (Mr. Darinchuluun's) treatment.

Mr. Darinchuluun testified that, when he returned to Mongolia in July 2007 to be with his father, he was abducted and beaten. According to Mr. Darinchuluun, his attackers confronted him with a newspaper article, which featured an interview he had given while in Switzerland concerning the illegal shipments. His attackers forced him to drink three or four bottles of vodka. When he woke up, he was on a railroad track and only narrowly escaped being run over by a train. He believes, but is not certain, that he was discovered by a railroad inspector. He spent three days in the hospital recovering. Mr. Darinchuluun did not present documentation of his injuries or hospitalization.

In August 2007, Mr. Darinchuluun again left Mongolia, this time for Russia. He remained in Russia until the fall of 2009, when he returned to Mongolia. Mr. Darinchuluun stated that he considered applying for asylum in Russia but decided against it because he believed that the authorities would deport him to Mongolia.

Mr. Darinchuluun returned to Mongolia and applied for a visa to the United States. In his visa application, Mr. Darinchuluun misrepresented the nature of his travels to the United States, stating that he wanted to purchase poker-game software. He used that visa to enter the United States in February 2010.

In April 2010, Mr. Darinchuluun was stabbed by another Mongolian national during an altercation in a bar in Illinois. Mr. Darinchuluun stated in his application for asylum that he had "no doubt" that the man who stabbed him was hired

by those who had tried to hurt him in Mongolia.[5] The police report of the incident, however, indicated that Mr. Darinchuluun knew the assailant and that the incident was prompted by an argument about who had the superior immigration status.

**B.**

Prior to the expiration of his visa, Mr. Darinchuluun applied for asylum. His application was denied, and he was served with a notice to appear. Before an IJ, he admitted removability and renewed his request for asylum.[6]

The IJ conducted a merits hearing and later denied Mr. Darinchuluun relief. In her written order, the IJ set forth the facts as recounted by Mr. Darinchuluun and noted that an applicant's testimony, standing alone, may be sufficient to satisfy his burden "if the Court determines that the testimony is credible, persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee."[7] The IJ then considered whether Mr. Darinchuluun's testimony met this standard:

> In the instant case, the Court's main credibility concern is the respondent's failure to seek asylum or other forms of protection prior to arriving in the United States. He lived

---

[5] *Id.* at 240.

[6] Mr. Darinchuluun also applied for withholding of removal and relief under the Convention Against Torture ("CAT").

[7] A.R. at 128 (citing 8 U.S.C. § 208(b)(1)(B)(ii)).

in Switzerland for some nine months and Russia for two years, but ultimately did not seek protection in either country. The respondent offered explanations for why he did not do so, and the Court acknowledges that in some cases, a failure to seek relief in intermediate countries is not always inconsistent with a fear of persecution. Nonetheless, it is a relevant factor that the court may consider in evaluating the applicant's credibility.

Along the same lines, the respondent did not alert U.S. embassy officials to the severe mistreatment he allegedly suffered when he sought to apply for the visa he used to enter the country. Instead, he acknowledged that he lied about his intentions, telling them he wished to attend to business. Again, his misrepresentations in seeking a nonimmigrant visa may be a reason to question the respondent's credibility.

These issues, in light of the respondent's otherwise largely consistent testimony, are not enough for the Court to find the respondent incredible. Yet the Court likewise cannot find that his testimony was alone sufficiently persuasive to meet his burden of proof. Pursuant to the REAL ID Act, the respondent must

therefore produce corroborating evidence to substantiate his claim.[8]

The IJ noted that Mr. Darinchuluun had submitted some documentation, but that "no reliable evidence in this record sufficiently corroborates the central aspects of his claim, namely that he reported corrupt and illegal practices and that he and others close to him were harmed in relation to these actions."[9] The IJ observed that Mr. Darinchuluun had kept in contact with at least one of his siblings,

> yet neither this sibling nor anyone else in his family has provided any sort of statement to support his application. The respondent was also allegedly able to send this sibling to obtain medical documentation for at least one incident, yet he has offered no documentation for the other treatment he sought. Moreover, he has not produced the newspaper article for which he claims to have been interviewed prior to his flight to Switzerland. He has not provided any reason why such documentation would be unavailable or unreasonable to obtain.[10]

The IJ therefore concluded that Mr. Darinchuluun had not met his burden to establish eligibility for relief.

On appeal, the BIA affirmed. It stated that,

---

[8] *Id*. (citation omitted).

[9] *Id.* at 129.

[10] *Id.* at 130.

> [a]fter consideration of the respondent's asser-
> tions on appeal, we cannot conclude that the
> Immigration Judge clearly erred in finding that
> the persuasiveness of the respondent's claimed
> fear of returning to Mongolia is undermined
> by his failure to seek asylum in Switzerland,
> where he lived for 9 months, and in Russia,
> where he lived for 2 years, with no reported
> harm; and that the respondent's admitted mis-
> representations to United States officials raised
> questions regarding his truthfulness. While the
> Immigration Judge did not make a direct nega-
> tive credibility finding, she properly found that
> the respondent's testimony was not sufficiently
> persuasive to satisfy his burden of proving his
> eligibility for relief from removal without cor-
> roboration.[11]

The BIA concluded that it was not unreasonable for the IJ to require that Mr. Darinchuluun corroborate "the central as-pects of his claim of persecution," and it rejected his argu-ment that the IJ was required to provide him with notice of the need for corroboration.[12]

The BIA also noted that Mr. Darinchuluun had submitted additional documents and affidavits and had requested that his case be remanded for further consideration in light of this additional evidence. The BIA determined, however, that Mr. Darinchuluun had not met his burden of establishing

---

[11] *Id.* at 3–4 (citations omitted).

[12] *Id.* at 4.

that the evidence, which included additional medical records and his newspaper interview, "was not available and could not have been discovered or presented at the former hearing."[13] It therefore denied Mr. Darinchuluun's request to remand.

Mr. Darinchuluun timely petitioned for review.

## II

## DISCUSSION

### A.

Where, as here, the BIA affirms the IJ's decision and also provides its own analysis, we review both the IJ's decision and the additional reasoning supplied by the BIA. *See Bathula v. Holder*, 723 F.3d 889, 897 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 919 (2014); *Familia Rosario v. Holder*, 655 F.3d 739, 743 (7th Cir. 2011). We review the agency's factual determinations under "the deferential substantial evidence standard," *Khan v. Holder*, 766 F.3d 689, 695 (7th Cir. 2014), and will reverse the agency's findings only if, viewing the record as a whole, a reasonable factfinder would be compelled to reach a contrary conclusion, 8 U.S.C. § 1252(b)(4)(B).

Under the REAL ID Act, once an IJ "determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence *must be provided* unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii)

---

[13] *Id.* at 5 (quoting 8 C.F.R. § 1003.2(c)(1)).

(emphasis added); *see also Liu v. Holder*, 692 F.3d 848, 854 (7th Cir. 2012). We also review deferentially an IJ's conclusion that corroboration is necessary; a court cannot "reverse a determination made by a trier of fact with respect to the availability of corroborating evidence…unless the court finds… that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

Mr. Darinchuluun first submits that the deficiencies identified by the IJ—his failure to apply for asylum in Switzerland and Russia and his misrepresentation on his U.S. visa application—did not warrant an adverse credibility determination. As a preliminary matter, Mr. Darinchuluun reads the IJ's decision incorrectly. The IJ did not make an adverse credibility finding; to the contrary, she concluded that, "in light of the respondent's otherwise largely consistent testimony," the shortcomings in his testimony were "not enough for the Court to find the respondent incredible."[14]

The IJ did conclude, however, that Mr. Darinchuluun's uncorroborated testimony was not "sufficiently persuasive to meet his burden of proof."[15] As we have noted, "an immigration judge now enjoys substantial leeway to demand corroboration of an asylum applicant's allegations whether or not the judge finds the applicant credible." *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009). Here, the IJ pointed to rational reasons why Mr. Darinchuluun's claims of persecution needed additional support: he did not apply for asy-

---

[14] *Id.* at 128.

[15] *Id.*

lum in two other countries, although he had the opportunity to do so, and he was not forthcoming with immigration authorities concerning the reason he wanted to obtain travel documents to the United States.

In determining that there was a need for further corroboration, the IJ certainly acted reasonably in focusing on Mr. Darinchuluun's failure to apply for asylum in Switzerland and Russia. In *Hassan v. Holder*, 571 F.3d 631 (7th Cir. 2009), we stated:

> We also credit the agency's reliance on Hassan's travel through several countries prior to arriving in the United States. In two of these countries, Yemen and Italy, Hassan remained for at least two months without seeking asylum. As stated by the IJ, after living in Djibouti for eighteen years without harm from the Ethiopian government, Hassan's departure and passage through several countries was more consistent with a desire to settle in the United States than a fear for his life. Although we do not say that failure to seek asylum in intermediate countries is always inconsistent with a fear of persecution, in this case, it was one of several "relevant factors" that the agency could consider in finding Hassan's testimony incredible. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *cf. Tarraf*[ *v. Gonzalez*], 495 F.3d [525, 534 (7th Cir. 2007),] (recognizing that return travel to the country of persecution may be a factor weighing against an applicant's credible fear of persecution); *Balogun v. Ashcroft*, 374 F.3d 492, 500–01 (7th Cir.

2004) (upholding an adverse credibility deter-
mination based in part on the applicant's mul-
tiple prior trips to the United States and the
United Kingdom without seeking asylum).

*Id.* at 639.[16]

The same holds true for the IJ's concern about
Mr. Darinchuluun's misrepresentation to U.S. consular au-
thorities. Mr. Darinchuluun relies upon *Rodriguez Galicia v.
Gonzales*, 422 F.3d 529 (7th Cir. 2005), for the proposition that
"[f]alse statements alone are not determinative of credibility,
and they must be reviewed specifically under the particular
circumstances."[17] As we already have explained, however,
the IJ did not use the false statement as the basis for an ad-
verse credibility finding. She did not even use this reason as
the *sole basis* for concluding that Mr. Darinchuluun's testi-
mony was not sufficiently persuasive to meet his burden.

---

[16] Mr. Darinchuluun relies on a pre-REAL ID Act case from the Ninth
Circuit, *Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir. 1986), for the
proposition that a petitioner's "failure to apply for asylum in any of the
countries through which he passed or in which he worked prior to his
arrival in the United States does not provide a valid basis for questioning
the credibility of his persecution claims." To the extent *Damaize-Job* states
a proposition of law—that an IJ may not consider an applicant's failure
to seek asylum in another country in assessing credibility—it has been
superseded by the REAL ID Act, which allows a trier of fact to consider
"all relevant factors" in determining the credibility of an applicant for
relief. 8 U.S.C. § 1158(b)(1)(B)(iii). To the extent that *Damaize-Job* states a
factual conclusion based on the quality of the applicant's explanation, it
simply does not apply here, where the IJ was not persuaded by
Mr. Darinchuluun's testimony.

[17] Pet'r's Br. 19.

Rather, she considered his misrepresentation among other relevant factors in reaching her conclusion that there was a need for further corroboration. The IJ's decision, therefore, does not run afoul of *Rodriguez Galicia*'s admonition.

At his merits hearing, Mr. Darinchuluun did provide some corroborating evidence. As noted by the BIA, however, this evidence "did not corroborate the material aspects of the respondent's claim of persecution."[18] The police report related to the April 10 stabbing incident in Illinois undermined his assertion that his whistleblowing in Mongolia was the basis for the altercation. Additionally, the hospital record related to the attack he sustained in August 2006 was "unintelligible[,] and the dates provided were inconsistent with the respondent's claim that he was hospitalized for a month on or about August 2006."[19] Finally, the newspaper article reporting on Magdei's death stated that there was no foul play suspected. None of these factual points go to the heart of Mr. Darinchuluun's claims. We agree, therefore, with the IJ and the BIA that Mr. Darinchuluun did not produce evidence that corroborated key elements of his claim.

Mr. Darinchuluun maintains that, before the IJ or the BIA may rest a denial of relief on an applicant's failure to provide corroborating evidence, they are required to give notice of any inconsistency or shortcoming in the applicant's testimony and provide the applicant with an opportunity to explain the inconsistency or supplement the record. According to Mr. Darinchuluun, "[t]he failure to provide such an op-

---

[18] A.R. at 4.

[19] *Id.*

portunity is a violation of Petitioner's legitimate rights and shall not be used against Petitioner."[20]

Mr. Darinchuluun's argument is foreclosed by our decision in *Rapheal v. Mukasey*, 533 F.3d 521 (7th Cir. 2008). In *Rapheal*, the BIA had affirmed the IJ's denial of relief because "the IJ properly found that Rapheal failed to meet her burden of proof…because 'she did not provide corroborative evidence and could have done so.'" 533 F.3d at 525. On appeal, Rapheal asserted, among other grounds for relief, that "it was unreasonable for the Board to expect her to present corroborative evidence." *Id.* at 529. Specifically, she claimed that "before ruling against her for failing to produce corroborative evidence, the IJ needed to warn her of the need for such evidence and that the IJ's failure to do so violated her due process rights." *Id.* at 530. We rejected this argument on several bases. We noted initially that Rapheal consistently had asserted that procuring corroborative evidence was impossible. Consequently, "the IJ's failure to warn her could not prejudice her." *Id.* Additionally, Rapheal had failed to raise her corroboration argument before the BIA. Finally we observed that

> *the REAL ID Act clearly states that corroborative evidence may be required, placing immigrants on notice of the consequences for failing to provide corroborative evidence. See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible tes-

---

[20] Pet'r's Br. 21.

timony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.").
*To hold that a petitioner must receive additional notice from the IJ and then an additional opportunity to provide corroborative evidence before an adverse ruling, would necessitate two hearings—the first to decide whether such corroborating evidence is required and then another hearing after a recess to allow the alien more time to collect such evidence. This would add to the already overburdened resources of the DHS, and such an approach would seem imprudent where the law clearly notifies aliens of the importance of corroborative evidence.*

*Id.* (emphasis added); *see also Abraham v. Holder*, 647 F.3d 626, 633 (7th Cir. 2011) (relying on *Rapheal* to conclude that "[t]here is…no need for additional notice" before an IJ requires corroboration).[21] Under this court's case law,[22] there-

---

[21] *Accord Ruptash v. Holder*, 525 Fed. App'x 491, 495 (7th Cir. 2013) ("Moreover, the REAL ID Act informs applicants that an IJ may require corroboration even if they testify credibly. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). Because the REAL ID ACT itself put Ruptash on notice that she should provide all the corroborating evidence available, the IJ was not *required* to independently ask her for her husband's affidavit, or give her a second chance to supply that evidence before ruling against her.").

[22] The courts of appeals are not consistent in their approach to a notice requirement. The Second Circuit, like this court, has held that "the alien bears the ultimate burden of introducing [corroborating] evidence without prompting from the IJ." *Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009). The Sixth Circuit has adopted this approach as well. *See Gaye v. Lynch*, No. 14-3652, 2015 WL 3555937, at *7 (6th Cir. June 9, 2015). The Ninth Circuit, however, has held that the IJ must provide a credible applicant

(Continued...)

fore, the IJ did not err in failing to give Mr. Darinchuluun prior notice of the need for corroboration.

### C.

While his appeal was pending before the BIA, Mr. Darinchuluun filed a motion to remand to allow the IJ "to consider…newly obtained evidence."[23] These documents included additional medical records, his father's death certificate, statements from his mother and sister, his newspaper interview, and media coverage of railway operations. According to Mr. Darinchuluun, his relatives in Mongolia could not procure the documents at an earlier date because of governmental restrictions, which were relaxed around June 2012.

"[W]here a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply

---

(…Continued)

"with notice and an opportunity to either produce the evidence or explain why it is unavailable." *Ren v. Holder*, 648 F.3d 1079, 1090 (9th Cir. 2011). The Third Circuit also has determined that an IJ must inform the applicant for relief of the need for corroboration prior to an adverse ruling. *See Chukwu v. Att'y Gen. of the United States*, 484 F.3d 185, 192 (3d Cir. 2007). Mr. Darinchuluun does not argue that we should revisit our rule in light of more recent Ninth Circuit precedent.

We note that in *Matter of L-A-C*, 26 I. & N. Dec. 516 (BIA 2015), the Board has expressed agreement with our decision in *Rapheal v. Mukasey*, 533 F.3d 521 (7th Cir. 2008), and has discussed thoroughly the obligations of the immigration judge and the applicant with respect to corroborative evidence. *Matter of L-A-C*, 26 I. & N. Dec. at 518–24.

[23] A.R. at 12.

with the substantive requirements for such motions." *Matter of Coelho*, 20 I & N Dec. 464, 471 (BIA 1992); *cf. Morgan v. Holder*, 634 F.3d 53, 60 (1st Cir. 2011) (treating a motion to remand as a motion to reopen). Under 8 C.F.R. § 1003.2(c)(1), a motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." We will uphold the BIA's denial of a motion to reopen "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Awad v. Ashcroft*, 328 F.3d 336, 341 (7th Cir. 2003) (internal quotation marks omitted).

Here, the BIA denied Mr. Darinchuluun's motion because he had not met his burden of establishing that his supplemental materials "could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). It stated:

> While the respondent belatedly asserts in his motion that his sister in Mongolia was unable to obtain "verification or inquiry" documents by "the date of the initial immigration court session" due to government bureaucratic restrictions (Respondent's Letter (Jan. 29, 2013)), we are unpersuaded the respondent could not have presented these additional documents— which include[] medical records from August to September 2006 that diagnosed him with "circulatory anastomosis," and a page of his newspaper interview—in time for his merits

hearing in September 2011. This is particularly so when there is no indication in the record that the respondent apprised the Immigration Court of any alleged delays or difficulties in procuring documents, nor did he request a continuance to await the receipt of additional documents from Mongolia (*see, e.g.*, Tr. 57–64). The respondent, likewise, had previously presented what was purported to be a medical document regarding his August 2006 hospitalization at his prior hearing, thus demonstrating his apparent ability to procure medical documentation at that time. Finally, the respondent in his letter himself admitted that his sister did not begin collecting documents on his behalf until May 2012, after a removal order was entered against him (Respondent's Letter (Jan. 29, 2013)).[24]

The BIA's explanation is reasonable. Mr. Darinchuluun submitted documentation for one hospitalization at the merits hearing; there does not seem to be any reason, therefore, that he could not have obtained other substantiating medical documents earlier in the administrative process. The remaining materials consisted largely of affidavits from family members and media coverage, which would not have been affected by restrictions on the issuance of government doc-

---

[24] A.R. at 5–6 (footnotes omitted). The BIA also noted that there were inconsistences in some of the supplemental materials provided by Mr. Darinchuluun. *See id.* at 5 nn.2–3.

uments.[25] Given that Mr. Darinchuluun did not lose contact with family members following his departure from Mongolia, he should have been able to procure these materials and present them at the merits hearing. We therefore affirm the BIA's denial of Mr. Darinchuluun's motion to remand.[26]

## Conclusion

For the reasons set forth in this opinion, the petition for review is denied.

PETITION DENIED

---

[25] His supplemental submission contained one other official record, his father's death certificate. That record, however, substantiated only the fact of his father's death, not the cause or the circumstances surrounding it. *See* A.R. at 37. Consequently, it did little (if anything) to corroborate Mr. Darinchuluun's claims of persecution.

[26] Because Mr. Darinchuluun has not established his eligibility for asylum, he necessarily has not met the higher standard for withholding of removal. *See, e.g.*, *Vahora v. Holder*, 707 F.3d 904, 910–11 (7th Cir. 2013). Additionally, he has not made any specific argument related to his CAT claim. He therefore has waived that claim. *See Wedderburn v. INS*, 215 F.3d 795, 799 (7th Cir. 2000).