In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2964

JUAN CARLOS BARRAGAN-OJEDA,

*Petitioner*,

*v.*

JEFF SESSIONS, Attorney General of
the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A206-516-229.

ARGUED DECEMBER 1, 2016 — DECIDED APRIL 5, 2017

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Juan Carlos Barragan-Ojeda, a native
and citizen of Mexico, entered the United States without au-
thorization in 2013. He was apprehended at the border and
requested asylum. Appearing pro se before the immigration
judge ("IJ"), he claimed eligibility for asylum because a Mex-
ican criminal gang had persecuted him. At the conclusion of

his testimony, he briefly mentioned that he had been the victim of discrimination in employment because he was effeminate, but, when questioned by the IJ, he denied that he was gay.

The IJ denied asylum, and Mr. Barragan-Ojeda appealed to the Board of Immigration Appeals ("Board" or "BIA"). There, represented by counsel, Mr. Barragan-Ojeda filed an additional affidavit asserting facts not before the IJ: he claimed that he was gay and that he had been persecuted because of his sexual orientation. The Board adopted and affirmed the IJ's denial of asylum on the ground asserted in the original application. With respect to the new ground, the Board treated the appeal as a motion to remand and determined that the requirements for such a motion were not satisfied. Mr. Barragan-Ojeda now petitions for review in this court. He submits that the IJ denied him due process in the conduct of the proceedings and that the Board erred in denying him asylum on the basis of his sexual orientation.

We deny the petition for review. Mr. Barragan-Ojeda's due process challenge is premised on the IJ's conduct of the hearing; this sort of claim must be presented to the Board before it can be presented here, and Mr. Barragan-Ojeda did not do so. In any event, nothing in the record suggests that the IJ's conduct of his hearing evinced the kind of impatience and bias that might be characterized as a violation of due process of law.

The Board correctly evaluated the new evidence submitted by Mr. Barragan-Ojeda under the standards applicable to a reopening. It correctly denied relief because he submitted no evidence to establish that his new claim was previously unavailable.

# I

# BACKGROUND

Mr. Barragan-Ojeda was born in Mexico on March 6, 1995 and entered the United States in July 2013 at age 18. He was apprehended at the border and requested asylum. The Department of Homeland Security ("DHS") then placed him in removal proceedings. The IJ continued his case for over a year, in part to give him an opportunity to locate an attorney if he wished to be represented in proceedings.[1] On April 23, 2015, Mr. Barragan-Ojeda appeared pro se before the IJ for an individual merits hearing on his asylum claim. His current attorney asserts in his brief that Mr. Barragan-Ojeda made a preliminary, off-the-record request to the IJ for a closed asylum hearing, but that the IJ denied the request. Members of Mr. Barragan-Ojeda's family were present.

Before the IJ, Mr. Barragan-Ojeda testified, with the assistance of an interpreter, that he had entered the United States in 2013 to "save [his] life," which was threatened by a large criminal gang in Mexico called the Caballeros Templarios.[2] His family resides in the Mexican state of Michoacán, where they own land and where his father is a farmer and a proprietor of a liquor store. Members of the gang extorted money from his family from 2012 until 2013, when his father refused to continue paying them. At that point, his father "tried to get us out of the town."[3] Mr. Barragan-Ojeda came to the United

---

[1] The IJ gave him a list of organizations that could assist him at little or no cost.

[2] A.R. at 249.

[3] *Id*. at 251 (testimony of Mr. Barragan-Ojeda).

States, but his parents elected to stay in the same town in Michoacán. Mr. Barragan-Ojeda stated that after he left Mexico, shots were fired through the windows of his parents' home. He also claimed that his family members were victims of extortion. When asked if "all businessmen or all people in the area" were similar targets, he replied, "Yes. Yes. They ask for every business you have, for every car you have, for every motorcycle."[4] His parents had not relocated, he continued, because they "have their whole life there. They have their houses. They have their parcels. They have their land."[5] His family also had not sought government protection because "the government is also joined in with organized crime."[6]

Mr. Barragan-Ojeda supported his application with two articles in Spanish discussing the murder of his uncle. When asked, he said that he did not know the circumstances of his uncle's death. He also submitted a letter from his father. The letter noted that his uncle had been shot to death in their hometown and that the family was in danger and afraid of the police. It also noted, for the first time, that Mr. Barragan-Ojeda had received a phone call in which he had been "threatened that he would be killed."[7] According to his father, he would be targeted "because he was cooperating with the self-defense groups because he would take … food to those that are in the movement."[8] When asked by the IJ about this statement,

---

[4] *Id.*

[5] *Id.* at 252.

[6] *Id.*

[7] *Id.* at 255.

[8] *Id.*

Mr. Barragan-Ojeda clarified that, on one occasion, his grand-
mother had sent plantains to a group of local people opposing
the extortion by the gang, and Mr. Barragan-Ojeda had
dropped off the box. Afterwards, he received a threatening
phone call, likely because gang informants were part of the
group.

The IJ began an oral ruling in which he denied Mr. Bar-
ragan-Ojeda's claim on the basis that the harm he faced was
too generalized and not tied to a protected ground; specifi-
cally, he had not identified a viable social group. Before fin-
ishing his ruling, however, the IJ engaged Mr. Barragan-
Ojeda in one final exchange:

> Q. Sir, is there anything else you want to tell
> me concerning your fear of going back to Mex-
> ico?
>
> A. It's just that there are many things.
>
> Q. Well, is there any other reason why you
> fear going back other than what you have told
> me?
>
> A. What about discrimination for being ef-
> feminate?
>
> Q. Well, that doesn't qualify you for asylum.
> I mean are you saying that you've been mis-
> treated by someone or people discriminate
> against you because of the way you look?
>
> A. Yes.
>
> Q. But what difficulties have you had?

A. Well, at work, when I would look for work they would tell me that they needed men and not little girls.

Q. I mean do you think, are you a homosexual or not?

A. No.

Q. But you think people perceive you that way.

A. Yes.

[Q.] Well, you left Mexico shortly after graduating high school. The fact that you believe you faced discrimination would not constitute persecution. So I don't see that you qualify to remain in the United States under the law.[9]

The IJ then continued an oral decision in which he noted that Mr. Barragan-Ojeda appeared to be attempting to define his social group as victims of extortion in Mexico, but that this group, defined only by a relationship to the persecutors, was not sufficient under Board precedent. The IJ also examined several other potential social groups, including those who support the self-defense group, or young men from families that had been extorted by criminal gangs, but he determined that these groups were too generalized and that the record was insufficient to establish a connection between these groups and his mistreatment. In the IJ's view, the primary goal of the violence was extortion, not punishment.

---

[9] *Id*. at 258.

Finally, the IJ turned to his last exchange with Mr. Barragan-Ojeda. He concluded that, although homosexuals are considered a social group for purposes of asylum claims, Mr. Barragan-Ojeda had denied being homosexual and "his limited testimony concerning job prospects because of his appearance does not lead this Court to conclude that he faces a more likely than not chance of persecution on account of being an imputed homosexual."[10]

Before the Board of Immigrations Appeals, Mr. Barragan-Ojeda, now with the support of retained counsel, submitted an additional one-paragraph statement, the translation of which states, in full:

> I was drinking with two drug-trafficking friends who were using cocaine after beginning to molest me and they became enraged because I told them to stop and one of them took a gun and the other started physically abusing me and the other deceived me. I thought I was going to die at this moment and I thought they would kill me and carry me to the river to shut me up. Out of fear I did not tell my father but instead told a friend of mine what had occurred, that I was gay, and that I was frightened because it was dangerous here. If they saw me the next day they were going to wake me up to kill me to ensure that nothing was said about what happened on June 20th[,] 2013. I could not live a normal life in the village and I went on the streets with fear. After the day July 2, 20[1]3, I

---

[10] *Id.* at 219.

received a call to carry food to the community
police and they told me that I was a dead man
for cooperating with the community police who
now had called the rural police and federal po-
lice. They came to us in the night outside the
house of a friend who wanted to obligate to say
where they sold drugs to us. We did not know
because we did not use them. Also I am afraid
to return to Mexico because this guy apparently
is involved with politics and he is the ex-hus-
band of my aunt, the sister of my father and is a
principal member of the rural police who before
were called the community police. Also, I do not
want to return to Mexico because of the discrim-
ination against people with my sexual appear-
ance.[11]

Mr. Barragan-Ojeda also submitted a number of second-
ary sources, including the State Department Country Report
for Mexico, four short news items from the Mexican press
about incidents of violence against homosexuals, and one
news item about the arrest of a leader of the Caballeros Tem-
plarios. Notably, in his brief to the Board, he made only pass-
ing reference to the original claims made before the IJ. Instead,
he focused on his new claim of rape in his additional state-
ment and on the persecution faced by gay men in Mexico.[12]
The brief contends, without citation to record evidence in the

---

[11] *Id.* at 48.

[12] His briefs to the Board and to this court both also state that he was "cas-
trated" in Mexico, but reference only his testimony regarding discrimina-
tion. *See* Pet'r's Br. 2. The claim appears, therefore, to be metaphorical.

form of a statement from Mr. Barragan-Ojeda or otherwise, that Mr. Barragan-Ojeda had not disclosed his sexual orientation at the first hearing because he was not ready to admit it publicly given his youth and inexperience, his upbringing and the rejection of homosexuality in Mexican culture, his shame as a rape victim, his nerves, his lack of counsel, and the presence of members of his family in the courtroom. The brief asserts, again without citation to evidence, that the IJ had denied a request to close the hearing.

The Board denied relief. It first adopted and affirmed the decision of the IJ denying the application for asylum on the grounds originally presented, namely extortion by the Caballeros Templarios. The Board held that Mr. Barragan-Ojeda had not established "that one central reason for the threats of harm by the Caballeros Templarios was on account of his membership in a particular social group or on account of any other protected ground."[13] The Board further ruled that his "vague testimony that he faced employment discrimination due to his effeminate demeanor also does not establish the basis for an asylum claim."[14]

The Board then turned to the new evidence submitted with the appeal, noting that Mr. Barragan-Ojeda had claimed "for the first time on appeal that he is a homosexual and was persecuted and fears persecution on account of his status as a homosexual."[15] The Board noted that, under its precedents,

---

[13] A.R. at 3.

[14] *Id.* (citing *Kaharudin v. Gonzales*, 500 F.3d 619, 623 (7th Cir. 2007), for the principle that discrimination falls short of persecution).

[15] *Id.* at 4.

an appeal "that presents a previously unraised basis for re-lief," including claims based on a new protected ground or "the same protected ground … predicated on a new or sub-stantially different factual basis" rather than one "that merely clarifies or alters the initial claim," is treated as a "new appli-cation."[16] The sexual orientation and assault basis for the claim was new, the Board concluded, and, therefore, would be treated as a motion to remand to the IJ and assessed under the same standard as a motion to reopen. That standard, found at 8 C.F.R. § 1003.2(c)(1), could be met only if the alien presented evidence that "was not available and could not have been discovered or presented at the former hearing." The Board concluded that Mr. Barragan-Ojeda had not satis-fied this requirement. His appellate brief to the Board claimed that his declaration regarding his sexual orientation and the sexual assault was not presented to the IJ "due to his youth, his lack of representation, and his fear of admitting that he identifies as a homosexual."[17] The Board noted, however, that Mr. Barragan-Ojeda was "18 years old when he was placed in removal proceedings, was advised of the privilege of being represented by counsel, and proceedings were continued to allow him an opportunity to retain counsel before the merits hearing was held more than a year and a half after he first appeared before the [IJ]."[18] Finally, the Board noted that Mr. Barragan-Ojeda's affidavit did *not* address any of these matters.

---

[16] *Id.* (internal quotation marks omitted).

[17] *Id.* (opinion of the Board).

[18] *Id.* at 4–5.

## II

## DISCUSSION

In his petition for review to this court, Mr. Barragan-Ojeda repeats the position he took before the Board. He declines to challenge the decision of the IJ and the Board with respect to the extortion and violence his family faced from the Caballeros Templarios. He first asserts various due process challenges to his proceedings before the IJ. He then focuses on the sexual-orientation-based claim that he asserted for the first time on appeal to the Board. More specifically, he contends that the IJ violated his right to due process of law when he denied Mr. Barragan-Ojeda's off-the-record request for a closed hearing and in the IJ's conduct of the hearing, especially in the judge's questioning of Mr. Barragan-Ojeda. He next argues that his sexual orientation disclosure is not "new" evidence, but simply a clarification of his prior testimony. He also maintains that his testimony was credible throughout his proceedings. Finally, he contends that, as a homosexual, he is within a particular social group and has established his eligibility for asylum.

### A.

We first examine Mr. Barragan-Ojeda's claim that he was denied due process of law when the IJ denied his request, made before the record of proceedings was opened, that the

proceedings be closed and the gallery be cleared.[19] He also asserts that the IJ subjected him to inappropriate questioning that amounted to a cross-examination.[20]

As the Government's brief correctly notes, Mr. Barragan-Ojeda did not raise these due process challenges before the Board. "Although due process claims generally do not require exhaustion because the BIA does not have authority to review constitutional challenges, when those issues involve procedural errors correctable by the BIA, applicants must raise such claims as part of their administrative appeal." *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). Because the Board had the authority to correct the kinds of procedural failings asserted in this case,[21] Mr. Barragan-Ojeda was required to

---

[19] *See* 8 C.F.R. § 1240.11(c)(3)(i) (providing that the IJ "shall inquire" whether the alien requests closure of proceedings and that they are to be "open to the public unless the alien expressly requests" otherwise).

[20] *See, e.g.*, *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538–39 (7th Cir. 2005) (holding that the IJ violated the alien's right to due process in part by "questioning [that] clearly assume[d] the role of counsel for the Government").

[21] As we have explained:

> Before we can reach most issues, however, the alien is required to raise them before the BIA. The only exception is where *the BIA itself would be powerless to address the problem*, as might be the case with some fundamental constitutional claims. As we have noted before, however, many due process arguments are based on procedural failings that the BIA is capable of addressing. In those instances, the alien must exhaust his or her remedies at the BIA before bringing the claim before this court.

raise them in the course of his administrative appeal. We therefore do not consider the substance of these claims.

For the sake of completeness, however, we note that, even if Mr. Barragan-Ojeda had preserved these claims by presenting them to the Board, they would not warrant relief. First, Mr. Barragan-Ojeda has based his claim about the alleged denial of closure of proceedings solely on unsupported assertions in his brief, without citation to any evidence such as a supplemental declaration filed with the Board. Therefore, neither the Board nor this court has any basis for establishing that these off-the-record conversations had occurred.

As to the contention that the IJ took on the role of the Government attorney, Mr. Barragan-Ojeda cites no specific examples of inappropriate comments, interruptions, or anything

---

*Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006) (emphasis added) (citations omitted). The Board would not have been powerless to address the issues raised here. On the desire to testify in a closed hearing, we have held that where "the Board could have addressed" the claim by "remand[ing] the case to the IJ for another hearing," the failure to exhaust a due process claim is not excused. *Lin v. Holder*, 630 F.3d 536, 542 n.2 (7th Cir. 2010). We also have acknowledged that claims of bias on the part of the IJ, such as would be evident from inappropriate questioning, are resolvable by the Board in the first instance. *Ghaffar v. Mukasey*, 551 F.3d 651, 656 (7th Cir. 2008) ("There are literally dozens of Board decisions resolving claims of bias. When bias has been established, the Board has the authority to remand a case for a new hearing before a different IJ, and our research reveals that the BIA has done so on multiple occasions …."). These types of objections relating to the conduct of the hearing are distinguished from those the Board cannot resolve, such as constitutional challenges to statutory or regulatory provisions. *See, e.g.*, *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006).

else similar to IJ conduct we previously have found problematic. The statute specifically allows the IJ to "receive evidence, and *interrogate, examine, and cross-examine* the alien and any witnesses." 8 U.S.C. § 1229a(b)(1) (emphasis added). We have found no due process violation when an IJ, using these statutory authorities, merely has taken an active and impartial role in the proceedings. When the IJ does not demonstrate "impatience, hostility, or a predisposition against" an alien's claim, and where the questions assisted in the development of the record on relevant points, the mere fact that the IJ elicited testimony is not inappropriate and certainly does not raise due process concerns. *Hasanaj v. Ashcroft*, 385 F.3d 780, 784 (7th Cir. 2004).[22] "An IJ, unlike an Article III judge, is not merely the fact finder and adjudicator but also has an obligation to establish the record." *Id.* at 783 (internal quotation marks omitted) (quoting *Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002)). Particularly with a pro se respondent such as Mr. Barragan-Ojeda, fair questioning by the IJ often is required to obtain information from the alien necessary for a reasoned decision on the claim. The authority can be misused, and we have not hesitated to grant an alien's petition where the IJ's conduct has been hostile or abusive, or has *prevented* rather than facilitated the creation of an evidentiary record in support of an alien's claim. *See, e.g.*, *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 539 (7th Cir. 2005) (noting frequent interruptions and

---

[22] In *Hasanaj v. Ashcroft*, 385 F.3d 780, 784 (7th Cir. 2004), we reviewed multiple instances of the IJ questioning the petitioner and noted: "These questions were to develop the record with whatever the Petitioner had to offer for his case. The questions reflect what the IJ still needed to know in order to make a fully informed decision. There are no questions, or group of questions that indicate that this IJ was anything but thorough and fair in his obligation to this Petitioner."

hostility toward the alien by the IJ); *Podio v. I.N.S.*, 153 F.3d 506, 510 (7th Cir. 1998) (finding a due process violation based on the IJ's impatience, frequent interruptions, and arbitrary refusal to hear testimony that would have corroborated the alien's case). Mr. Barragan-Ojeda's general complaints about the IJ's conduct simply do not rise to this level. Indeed, we have examined the transcript of the proceedings before the IJ. That record reveals *no* basis for Mr. Barragan-Ojeda's contention. The IJ *carefully* and *thoroughly* asked him about his claim and explored alternate characterizations of the claim that might allow relief. There is *no* basis for an allegation of unfairness.

## B.

We now consider Mr. Barragan-Ojeda's contention that he is eligible for asylum on the basis of his sexual orientation and as a victim of sexual assault. These grounds were raised for the first time before the Board and supported there by a short supplemental declaration. The Board treated this matter as a motion to remand or reopen for consideration of new evidence. It relied on its own decision in *Matter of M-A-F-*, 26 I. & N. Dec. 651 (BIA 2015), which held that an asylum claim "that presents a previously unraised basis for relief," including one "based on the same protected ground" but "predicated on a new or substantially different factual basis," is a "new application." *Id.* at 655. The Board rejected Mr. Barragan-Ojeda's argument that he simply was clarifying or

slightly altering his claim. Rather, it held that he had presented a new claim that had to be treated as a motion to reopen.[23]

The Board was on solid ground in concluding that the mere prior mention of effeminacy and employment-related discrimination was insufficient to raise within his original claim an entirely new narrative of sexual orientation, sexual assault, and discrimination against gay men in Mexico. Indeed, *even if* we were to consider the sexual orientation basis to have been raised effectively in the earlier proceeding because of his testimony about effeminacy, his appellate submissions introduce facts "substantially different from those in the earlier application." *Id.* at 655. Mr. Barragan-Ojeda's request for asylum is not simply presented in more detail, it is wholly transformed by the new assertions he made before the Board.

Furthermore, *even if* his claim before the Board could be characterized as a continuation of the original application, the Board had no authority to evaluate on its own that factual submission. The Board cannot make factual findings in the course of an appeal; the regulations instruct a party seeking to introduce new facts into the evidentiary record to submit a motion to remand.[24] We have acknowledged that such motions, which are "really in the nature of a motion to reopen,"

---

[23] A.R. at 4 (citing *Matter of Ige*, 20 I. & N. Dec. 880, 884 (BIA 1994)).

[24] 8 C.F.R. § 1003.1(d)(3)(iv) provides:

> Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that

should be evaluated under the substantive standards for reopening set forth in 8 C.F.R. § 1003.2(c)(1). *Darinchuluun v. Lynch*, 804 F.3d 1208, 1217 (7th Cir. 2015) (quoting *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992)). The applicable regulations provide, moreover, that a motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1).

In any event, such a motion should be granted only when the "evidence sought to be offered is material and *was not available and could not have been discovered or presented at the former hearing." Id.* (emphasis added). Finally, in the case of discretionary relief such as asylum, a motion to reopen should not be granted if the ability to seek "relief was fully explained" in the course of earlier proceedings "and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing." *Id.*

The Board appropriately concluded that Mr. Barragan-Ojeda's additional submissions on appeal did not meet the requirements for a motion to remand. Specifically, it correctly ruled that his motion was not "accompanied by evidence which was not available and could not have been discovered

---

the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.

or presented at the former hearing."[25] Counsel's brief suggested that "his youth, his lack of representation, and his fear of admitting that he identifies as a homosexual" prevented him from presenting the full facts before the IJ.[26] As the Board noted, however, Mr. Barragan-Ojeda's own supplemental "affidavit d[id] not address his reasons for making this claim for the first time on appeal."[27] Under these circumstances, the attorney's assertions about Mr. Barragan-Ojeda's state of mind before the IJ simply do not suffice to establish that reopening was warranted. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (noting that, in request to reopen, "[c]ounsel's unsupported assertions in respondent's brief do not establish that respondent could satisfy" the requirements for relief).[28] In short, even if the claim of persecution on the ground of homosexuality had been properly before the Board, it could not have considered that matter; nor could it have remanded the matter for further proceedings before the IJ.

---

[25] A.R. at 4; *see also* 8 C.F.R. § 1003.2(c)(1).

[26] *Id.* (opinion of the Board).

[27] *Id.* at 4 n.1.

[28] We need not consider, therefore, whether any of the reasons counsel proffers *could* justify, on the appropriate record, a failure to mention sexual orientation earlier in the removal proceedings. *Cf. Moab v. Gonzales*, 500 F.3d 656, 661 (7th Cir. 2007) (concluding that, in a credible fear interview, it was "reasonable that [the petitioner] would not have wanted to mention his sexual orientation for fear that revealing this information could cause further persecution as it had in his home country").

**Conclusion**

Mr. Barragan-Ojeda has not demonstrated that he was denied due process of law by the IJ's considering his asylum claim. The Board was on solid ground in evaluating Mr. Barragan-Ojeda's claim as a motion to remand. His submissions on appeal amounted to a wholesale replacement of his original requests for relief before the IJ, supported by entirely new facts. On the merits of a request for remand, Mr. Barragan-Ojeda created no evidentiary record of his reasons for failing to disclose his sexual orientation claim before the IJ. Without any such evidence, the Board had no basis to conclude that the evidence he sought to introduce on appeal was previously unavailable. The Board therefore did not err in denying a remand to present his new evidence.

PETITION DENIED