12-179-ag
Lin v. Holder

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: February 6, 2014      Decided: August 19, 2014)

Docket No. 12-179-ag

WEINONG LIN,

*Petitioner,*

– v. –

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent,*

Before: JACOBS, CALABRESI and POOLER, *Circuit Judges*.

Appeal from a Board of Immigration Appeals decision affirming an Immigration Judge's declaration that, *inter alia*, Petitioner's application for asylum was untimely. Petitioner argued that his recent turn to public political activism had produced "changed circumstances" that excused untimeliness pursuant to 8 U.S.C. § 1158(a)(2)(D), but the Immigration Judge held that because Petitioner's activism reflected views he had when he emigrated, the activism did not constitute "changed circumstances." We conclude that this decision was erroneous, and we REMAND for reconsideration.

> GARY J. YERMAN, New York, NY, *for Petitioner*.
>
> MARGARET KUEHNE TAYLOR (Stuart Delery and David V. Bernal, *on the brief*), United States Department of Justice, Washington, DC, *for Respondent*.

1

CALABRESI, *Circuit Judge*:

This case concerns whether political activity first undertaken in the United States amounts to "changed circumstances" for purposes of the asylum provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158. Weinong Lin, a native and citizen of China who entered the United States as a non-immigrant in 1999, avows that he fled China because of his experience with "autocracy and corruption" there, Appellant's Br. at 5, that he harbored private anti-communist political beliefs when he left China, but that he did not publicly express those views until December 2007, when he joined the China Democratic Party World Union ("CDPWU"), wrote essays for the CDPWU website criticizing the Chinese Communist Party, and began attending group protests at the Chinese Consulate General's Office in New York City and at the Chinese Embassy in Washington.

# I

On May 20, 2008, Lin petitioned for (i) asylum under § 208 of the INA, 8 U.S.C. § 1158, (ii) withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and (iii) protection under the Convention Against Torture ("CAT") pursuant to 8 C.F.R. § 1208.16(c)(2). The Department of Homeland Security responded by charging Lin with the very removability that he had preemptively asked the government not to prosecute. After a hearing in October 2009, Immigration Judge ("IJ") Alan Vomacka denied Lin's application for relief and declared him removable. The IJ acknowledged that Lin's membership in and his activities with the CDPWU, and the publicity concerning those activities, "are new facts" and "new activity," but ruled as "a question of legal interpretation" that these new facts were not "a new reason to apply for asylum, but another aspect of the same reason that the applicant always had to apply for asylum." Certified Administrative Record ("CAR") in A089-266-864, at 79. Having made that ruling,

which precluded relief, the IJ went on to see no "probability of persecution or torture" because the activities are far removed from China, entailed no destruction of property that might provoke an interest in persecution, involved critical articles that were nevertheless "relatively calm and based in reasoned criticism," would be unlikely to attract the notice of Chinese authorities, and involved protest photographs from which identification of Lin "might be possible" but "would not be easy." *Id.* at 83, 84. Further, the IJ expressed the view, based on the scrupulous photographic records that the CDPWU made of its protest activities, that the group seems more devoted to documenting its activity than on having an effect. The IJ found "no evidence of an actual link" between the CDPWU and the Chinese Democratic Party ("CDP") group that was oppressed in China, *id.* at 87, or that any member of the CDPWU "has ever been persecuted or prosecuted in China," *id.*

As to Lin's credibility, the IJ found there was "an issue" that was, however, "difficult to resolve in a comprehensive way," *id.* at 88, even though there seemed to

4

be no "major discrepancies or inconsistencies in [Lin's] testimony concerning his activities with the [CDPWU]," *id.* at 89, and "his answers on that subject appear[ed] to be consistent," *id.* In the end, the IJ did not resolve competing insights and made no credibility finding. The "real weakness" of Lin's case was found to be lack of corroboration "concerning events in China," which is not a ruling that bears on issues of law concerning Lin's claimed vulnerability for acts done in this country. *Id.* at 90.

In affirming, the Board of Immigration Appeals ("BIA") agreed with the IJ on the point of law. The BIA went on to rule that, "[e]ven assuming for the sake of argument that the respondent established changed circumstances, upon our *de novo* review," Lin did not show a well-founded fear of persecution on an enumerated ground. *Id.* at 3. However, in agreeing with the IJ, the BIA drew inferences that the IJ did not draw concerning the likelihood that the Chinese government would know or care about Lin's activity in the United States.

5

## II

Under the INA, an immigrant must apply for asylum within one year of arriving in the United States, or must show either "changed circumstances which materially affect the applicant's eligibility for asylum" or "extraordinary circumstances" that prevented him from applying. 8 U.S.C. § 1158(a)(2)(D). Importantly, the "changed circumstances" standard is more expansive than the standard applicable in cases involving motions to reopen, where only a change in "country conditions" will suffice to allow reopening. *See Shao v. Mukasey*, 546 F.3d 138, 146-48, 169 (2d Cir. 2008); *Jin v. Mukasey*, 538 F.3d 143, 151 (2d Cir. 2008) ("Unlike in the case of a successive asylum application filed under 8 U.S.C. § 1158(a)(2)(D), changed personal circumstances are insufficient to excuse an alien from the procedural requirements of a motion to reopen").

Both the IJ and the BIA rejected Lin's contention that his CDPWU activism

constituted "changed circumstances" that would increase his risk of persecution back

in China. The BIA wrote: "[Lin's] joining the CDPWU party is a continuation of the

same reason that [he] left China, and we therefore agree with the Immigration Judge

that [Lin] failed to show that his joining the CDPWU . . . constituted changed

circumstances excusing the delay in filing his application." CAR at 3-4. Because this

position is in tension with Department of Justice ("DOJ") regulations and prior BIA

opinions, we grant Lin's petition for review and remand the BIA's judgment for

reconsideration.

We decline to review the fact issues that bear on whether Lin should be

granted asylum. While the BIA (expanding on largely inchoate and speculative

comments by the IJ) purported to find facts that might have been decisive if found by

the IJ, the BIA has no power to find facts. *See* 8 C.F.R. § 1003.1(d)(3)(i). To the

extent, therefore, that the BIA's alternate holding is based on its fact-finding, that

constitutes reversible error. To the extent, instead, that the alternate holding might be based on fact-finding by the IJ, we note that when there is an error of law (or as here a substantial and potentially decisive question of law) "that might have colored the findings of fact," it is permissible for us to remand. *Acharya v. Holder*, No. 11-4362-ag, 2014 WL 3821132, at *9-10 (2d Cir. Aug. 5, 2014) (remanding because "the IJ committed numerous 'combined legal and factual errors' in evaluating Acharya's claim that he was persecuted on the basis of his political belief . . . [that] were not corrected on appeal before the BIA"). We do so here.

**III**

Contrary to the government's threshold argument, we plainly have jurisdiction to consider Lin's argument about "changed circumstances." Though 8 U.S.C. § 1158(a)(3) strips this Court of jurisdiction to review agency determinations of fact in asylum cases, 8 U.S.C. § 1252(a)(2)(D) makes clear that we retain jurisdiction to

review "constitutional claims" and "issues of law." *See, e.g.*, *Liu v. INS*, 508 F.3d 716, 720-22 (2d Cir. 2007) (per curiam). Here, Lin is disputing the BIA's conclusion that his public political activity could not produce changed circumstances because it constituted a "continuation of the same reason" he left China. This argument concerns the *meaning* of "changed circumstances" under the INA. Because interpretive questions are "questions of law," we have jurisdiction under § 1252(a)(2)(D) to consider Lin's argument. *See, e.g.*, *Shi Jie Ga v. Holder*, 588 F.3d 90, 94-95 (2d Cir. 2009).

To be clear, if Lin were arguing about how many times he protested outside the Chinese Embassy, or about whether the Chinese authorities were capable of accessing the pro-democracy articles he published online, then 8 U.S.C. § 1158(a)(3) might divest us of jurisdiction. But Lin is not challenging a finding of fact here; rather, he is challenging the BIA's categorical holding that, even if the facts about a person's objective circumstances change, when they are altered by actions driven by

"the same reason" that led to a decision to emigrate, they cannot constitute changed circumstances. And that is manifestly a question of law. The IJ in this case acknowledged as much when he characterized the issue as "a question of legal interpretation." CAR at 117. In 8 U.S.C. § 1252(a)(2)(D), Congress recognized our appellate jurisdiction over that kind of question.

**IV**

The INA's asylum provision states that an otherwise untimely asylum application "may be considered . . . if the alien demonstrates . . . the existence of changed circumstances which materially affect the applicant's eligibility." 8 U.S.C. § 1158(a)(2)(D). To be eligible for asylum, an immigrant must show either that she suffered past persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion," or that she has a "well-founded fear of persecution" on one of those bases in her home country. 8 U.S.C. § 1101(a)(42). In

Lin's case, eligibility for asylum turns on whether he has a "well-founded fear" of political persecution. Thus, his application's untimeliness can be excused if he has demonstrated that "changed circumstances . . . materially affect" the chances that he would suffer political persecution in China. 8 U.S.C. § 1158(a)(2)(D).

Lin argues that his new CDPWU membership and his criticism of the Chinese Communist Party, made on the CDPWU website and in public spaces, has produced just such changed circumstances because (he contends) officials in China can see his public words and affiliations, and they may persecute him for them. The BIA and IJ rejected this contention. They concluded that political activism undertaken in the United States based on beliefs that motivated the decision to emigrate do not, as a matter of law, produce a change in circumstances.

The IJ, while acknowledging that Lin had engaged in "new activity" that was relevant, focused inquiry on the fact that Lin's activity was "motivated by the same general dislike, dissatisfaction, and unwillingness to put up with the government of

11

China" that he left unexpressed in China, but that motivated him to emigrate in the first place. CAR at 117. The IJ conceded that he was "not positive that the analysis [he] set out is correct"—perhaps an invitation to the BIA to clarify matters for future cases. *Id.* at 118. But the BIA adopted the IJ's analysis in a one-judge, non-precedential decision.

In weighing Lin's petition for review, "[w]e examine *de novo* questions of law and applications of law to undisputed fact." *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009). Because the BIA has "adopt[ed] the [IJ's] reasoning and offer[ed] additional commentary, we review the decision of the IJ as supplemented by the BIA." *Id.* (internal quotation marks omitted).

For a number of reasons, the IJ and BIA seem to us to have committed an error of law on the changed circumstances question. First, their conclusion is in tension with a controlling DOJ regulatory interpretation of the asylum provision. Second, their decision constitutes an unexplained, and therefore impermissible,

12

departure from prior agency precedent. *See New York Pub. Interest Research Grp., Inc. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005).

The statute states that an otherwise untimely asylum application "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility." 8 U.S.C. § 1158. While this language might admit of a range of permissible interpretations, *cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the DOJ regulations interpret it to say that changed circumstances include "activities the [asylum] applicant becomes involved in outside the country of feared persecution that place the applicant at risk," 8 C.F.R. § 1208.4(a)(4)(i)(B). Neither the BIA nor the IJ mentioned this regulation when considering Lin's case. More significantly, this regulation—indicating as it does that an applicant's *activities* might spur an increased risk that constitutes changed circumstances—calls into question the categorical ruling in Lin's case. The opinions

of the IJ and BIA state that the consistency of Lin's anti-communist beliefs (unexpressed in China but potentially manifested in the United States) precludes him from arguing that his new actions provoked "changed circumstances." In doing so, the IJ and BIA fail to consider whether, in a given case, a change in activity has increased the petitioner's risk profile.

In this respect, the opinions of the IJ and BIA decision mark an unexplained departure from prior BIA decisions. *See New York Pub. Interest Research Grp., Inc.*, 427 F.3d at 182. Most directly, in *In re Jin Wei Gao*, an unpublished (and therefore non-precedential) decision, the BIA stated that "the fact that the respondent may now be active in the CDP in the United States is a change in personal circumstances."[1] A079 692 001, 2008 WL 5025147, at *1 (BIA, Oct. 29, 2008). That non-precedential opinion lacks the weight of a published opinion, *see Rotimi v. Gonzalez*, 473 F.3d 55,

---

[1] The CDP, a political organization that "used to exist" in China and whose members were targeted by the Chinese government, is distinct from the CDPWU. CAR at 87. The IJ expressed deep skepticism that the CDPWU has ever had any relationship at all with any former members of the CDP. *Id.* There is also a "Chinese Democratic Party" active in the United States, but there is no evidence in the record "about how people involved in this group were treated if they returned to China." *Id.* at 4.

14

57 (2d Cir. 2007) (per curiam), but its conclusion regarding CDP activity seems to follow directly from principles expressed in *In re C-W-L-*, which explained that "changed circumstances" under § 1158(a)(2)(D) refers to "changes in *objective* circumstances relating to the applicant," 24 I. & N. Dec. 346, 352 n.9 (BIA 2007) (emphasis added); *cf. Shi Jie Ge*, 588 F.3d at 94-96 (holding that the BIA impermissibly considered the timeliness of an asylum application in relation to the applicant's date of *joining* the CDP, rather than his date of *public action*, which might have put him at risk of persecution). This interpretation of "changed circumstances," alongside the regulation, makes the IJ's and BIA's categorical rejection of Lin's petition due to his unchanging *subjective* antipathy towards the Chinese Communist Party untenable under existing BIA rulings. There may be ways to read the statute to support a subjective inquiry, but the BIA has not presented us with them, so we express no view. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).[2]

---

[2] The BIA's treatment of so-called "second child" cases also undercuts the decision in the case before us. In those cases, the BIA has concluded that the birth of a second

15

The IJ drew an analogy between Lin's situation and a situation in which an applicant points to "each new battle" in a civil war as evidence of changed country conditions. CAR at 118. Just as every individual battle does not amount to changed country conditions, every decision made by Lin does not, according to the IJ, produce changed personal circumstances. The analogy is, however, flawed. While Lin's reasons for action stem from beliefs that have persisted over years, his actions themselves were new.[3]

We invite precedential BIA consideration of various unresolved issues that inhere in this case. *See Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 116 (2d Cir. 2006). They are: When a petitioner initiates or intensifies public opposition to the home regime for the first time after arrival in the United States, what principles govern the

---

child constitutes a relevant change in personal circumstances when it increases the likelihood that an asylum applicant will be persecuted under Chinese family planning laws. *See In re T-M-H- & S-W-C-*, 25 I. & N. Dec. 193 (BIA 2010). The key thing in the second child cases is not any change in the parent's intentions or beliefs, but rather the objective event that has led to an increased likelihood that the applicant now possesses a "well-founded fear of prosecution."

[3] Indeed, he filed for asylum "five or six months" after becoming politically active. CAR at 114.

availability of a claim for asylum, what is an appropriate assessment of credibility as to such a claim, and what should guide us in determining the risk of persecution if such a claim is denied? To what extent if at all is the asylum statute concerned with sincerity in situations like these? If sincerity is relevant, is there a presumption one way or another? We note that when considering motions to reopen, any and all arguments regarding changed personal circumstances are insufficient. *See, e.g.*, *Yuen Jin v. Mukasey*, 538 F.3d 143, 151-52 (2d Cir. 2008). We also note that claims of latter-day political awakening resemble those of newfound religious conscience, which can be "easy to manufacture." *Y.C. v. Holder*, 741 F.3d 324, 338 (2d Cir. 2013). But the sincerity problem has not been a reason to disregard or discount all (or even most) religious conscience claims. *See, e.g.*, *Ehlert v. United States*, 402 U.S. 99, 103 (1971) (stating that "those whose views are late in crystallizing" cannot be "deprived of a full and fair opportunity to present the merits of their conscientious objector claims").

While some immigrants who espouse pro-democracy views may be making a bid to stay in the country for economic or family reasons, others may be sincerely "respond[ing] . . . to an inward mentor." *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943) (discussing conscientious objection). And, significantly, motivations may well be mixed. As to such circumstances too, guidance by the BIA, in a careful precedential opinion, would be extremely helpful.

The same is true in assessing the relationship of sincerity to the risk of persecution if claims of this sort are denied. Here, too, the BIA may do well to look to the types of considerations that have shaped its (and our) jurisprudence regarding changed country conditions. In that area of inquiry, individualized assessment takes on a central role, and has tended to favor investigation of the "objective[] reasonable[ness]" of an applicant's fear of future persecution based on changed country conditions, not his sincerity. *Lecaj v. Holder*, 616 F.3d 111, 117 (2d Cir. 2010) (stating that "speculative anxiety, however sincere," did not count as well-founded

fear). Additionally, the role of fact-development is central to that inquiry, as it undoubtedly is to this one. *See Shou Yung Guo v. Gonzales*, 463 F.3d 109, 114-15 (2d Cir. 2006).

Synthesizing the complex strains that go into interpreting the statutory words "changed circumstances" is anything but easy. And the BIA is best-situated to do so in the first instance, keeping the regulatory goals of the DOJ in mind. *See Gonzales v. Thomas*, 547 U.S. 183 (2006) (per curiam) (discussing ordinary remand rule); *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam) (same). For this reason, after correcting the IJ and BIA error as to whether Lin's pro-democracy activism was something new, we remand the question of whether Lin adequately demonstrated, to the satisfaction of the Attorney General, and in accordance with regulation and precedent, that changed circumstances have resulted in an increase in his well-founded fear of persecution based on political opinion in China. And we encourage the BIA to set

forth, with the benefit of its institutional expertise, some guidelines on how to judge similar cases in the future.

## CONCLUSION

We GRANT the petition for review and REMAND the judgment to the BIA for further proceedings consistent with this opinion.