# Matter of D-G-C-, Respondent

*Decided June 7, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The mere continuation of an activity in the United States that is substantially similar to the activity from which an initial claim of past persecution is alleged and that does not significantly increase the risk of future harm is insufficient to establish "changed circumstances" to excuse an untimely asylum application within the meaning of section 208(a)(2)(D) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(D) (2018).

FOR RESPONDENT: King Lun Wu, Esquire, Flushing, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ashley Walker, Assistant Chief Counsel

BEFORE: Board Panel: GREER, WILSON, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The respondent has appealed from an Immigration Judge's March 13, 2018, decision denying his application for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018), respectively.[1] The appeal will be dismissed in part, and the record will be remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the People's Republic of China who entered the United States as a nonimmigrant B-2 visitor on January 6, 2012, with authorization to remain in the United States until July 5, 2012.

---

[1] The Immigration Judge also denied the respondent's request for protection under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). The respondent has not meaningfully challenged this determination on appeal. We deem the matter waived. *See Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (declining to address determinations not challenged on appeal).

He remained in the United States beyond that date, without authorization. He filed an affirmative application for asylum and withholding of removal on November 12, 2013, alleging past persecution and a fear of future harm in China on account of his religion, and was later placed in removal proceedings.

The respondent testified during his removal hearing that police officers in China detained him on two separate occasions in 2011, because he was caught publicizing or was suspected of publicizing Christian proselytizing materials by posting flyers on walls. During the first arrest, police detained him for 2 days and beat him with batons. During the second arrest, they hit and kicked him. He subsequently hid at a relative's house, and, in order to avoid future harm, this relative helped him obtain a visa to come to the United States.

After he entered the United States, the respondent emailed Christian proselytizing materials to people in China. The respondent further testified that on November 1, 2013, his Christian "brothers and sisters" in China told him that the police discovered one of his emails and were still trying to catch him; his wife also told him that the police ordered her to report his return to them.

The Immigration Judge found the respondent was barred from applying for asylum because he did not file his asylum application within 1 year after the date of his arrival in the United States and did not demonstrate changed or extraordinary circumstances excusing the untimely filing of his application. *See* sections 208(a)(2)(B), (D) of the Act; 8 C.F.R. § 1208.4(a)(2), (4)–(5) (2020). The Immigration Judge also concluded that the respondent had not met his burden to show that the harm he experienced in China rose to the level of persecution or that his fear of future persecution was objectively reasonable. *See* 8 C.F.R. §§ 1208.13(b), 1208.16(b) (2020).

On appeal, the respondent argues that the Immigration Judge erred in concluding that he had not established changed circumstances that exempt his asylum application from the 1-year filing deadline.[2] The respondent also challenges the Immigration Judge's determination that he had not established past persecution on account of his religion that would give rise to a presumption of future harm. We address each argument in turn.

---

[2] The respondent does not claim that "extraordinary circumstances" within the meaning of 8 C.F.R. § 1208.4(a)(5) delayed the filing of his asylum application. Nor is his claim premised on an assertion of changes in conditions in China pursuant to 8 C.F.R. § 1208.4(a)(4)(i)(A).

## II. ANALYSIS

### A. Changed Circumstances

Section 208(a)(2)(B) of the Act provides that an alien is ineligible for asylum unless he or she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." *See also* 8 C.F.R. § 1208.4(a)(2)(i)(A). The parties do not dispute that the respondent entered the country on January 6, 2012, and filed for asylum on November 12, 2013, and thus his application was properly deemed to be untimely filed. However, section 208(a)(2)(D) of the Act provides that an untimely asylum application may be considered "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum." *See also Ordonez Azmen v. Barr*, 965 F.3d 128, 136–37 (2d Cir. 2020); *Matter of M-A-F-*, 26 I&N Dec. 651, 656 (BIA 2015); 8 C.F.R. § 1208.4(a)(4).

Changed circumstances under section 208(a)(2)(D) of the Act may include, but are not limited to, "changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 1208.4(a)(4)(i)(B). Although the facts pertaining to what occurred in a case are reviewed by the Board for clear error, whether those factual determinations constitute "changed circumstances" under the Act and the applicable regulations is a legal determination we review de novo, because it involves the application of the law to the determined facts. *See Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020).

The United States Court of Appeals for the Second Circuit, in whose jurisdiction this case arises, has held that an untimely application can be excused if an alien demonstrates changed circumstances that materially affect the chances he or she would suffer persecution. *See Weinong Lin v. Holder*, 763 F.3d 244, 248 (2d Cir. 2014); *see also Ordonez Azmen*, 965 F.3d at 138. The Second Circuit has also observed that the Board previously expressed that the phrase "'changed circumstances' under [section 208(a)(2)(D)] refers to 'changes in objective circumstances relating to an applicant.'" *Weinong Lin*, 763 F.3d at 249 (emphasis omitted) (quoting *Matter of C-W-L-*, 24 I&N Dec. 346, 352 n.9 (BIA 2007)). However, while these decisions direct us to evaluate each case on its own facts and circumstances, neither addressed the central questions in this case. [3]

---

[3]  Unlike the respondent, the applicant in *Weinong Lin* did not allege past persecution but instead claimed he feared future persecution in China based on the fact that he "harbored

Specifically, what principles govern in determining whether a particular fact, or facts, constitutes a "changed circumstance" for purposes of section 208(a)(2)(D), and in assessing whether a changed circumstance materially affects an applicant's eligibility for asylum.

To qualify for this exception, we conclude that the Act and its implementing regulations require that the applicant's circumstances be changed—in other words, the applicant's circumstances must be different in a significant way, which means they are qualitatively different. Moreover, the changed circumstances must be material to an applicant's eligibility for asylum—not just a material fact or circumstance that might influence a decision-maker in some way. *See generally Matter of D-R-*, 25 I&N Dec. 445, 450 (BIA 2011) (setting forth the test for discerning whether a factual misrepresentation is material), *rev'd on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015). Thus, to be material, changed circumstances must significantly affect the applicant's eligibility for asylum as a consequence of newly established facts or a new legal basis for relief. *See* section 208(a)(2)(D) of the Act; 8 C.F.R. § 1208.4(a)(4)(i)(B).

We observe that the regulatory history supports this interpretation of "changed circumstances." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997) (Supplementary Information). This history reflects that the Department of Justice promulgated § 208.4(a)(4)—which was later renumbered as § 1208.4(a)(4)—to better define the changed circumstances exception "by indicating that the definition may include either changed conditions in the home country or changes in objective circumstances relating to the applicant in the United States, including changes in applicable U.S. law, that create a reasonable possibility that the applicant may qualify for asylum." *Id.*

Here, the respondent's claim is premised, in large part, on the past harm he experienced in China when he was detained and beaten after he was caught distributing Christian proselytizing materials in 2011. He argues that his activity in the United States constitutes "changed circumstances" because

---

private anti-communist political beliefs when he left China, but [only] publicly express[ed] such views" after he joined an anti-communist political organization in the United States. 763 F.3d at 245; *see also id.* at 250 (remanding for us to address, among other issues, "what principles govern the availability of . . . asylum" when an alien "initiates or intensifies public opposition to the home regime *for the first time after arrival in the United States*" (emphasis added)). The court in *Ordonez Azmen* held that this Board was permitted "to consider an asylum application that is otherwise untimely based on changed circumstances that occur after the application is filed." 965 F.3d at 138. Both cases were remanded to the Board to further consider whether the applicants' activities in the United States constituted changed circumstances. *See Weinong Lin*, 763 F.3d at 250–51; *see also Ordonez Azmen*, 965 F.3d at 136, 139–40.

the proselytizing materials he emailed to people in China increased or renewed the police's interest in him and increased the risk that he will be rearrested and persecuted if he is removed to China, leading him to apply for asylum. The Immigration Judge determined that the respondent did not demonstrate changed circumstances because the police's interest in him predated his departure from China and continued after he left. Notwithstanding the respondent's arguments, upon our de novo review, we agree with the Immigration Judge that the respondent's activity in the United States does not constitute "changed circumstances" within the meaning of section 208(a)(2)(D) of the Act.

We are cognizant that the respondent's subsequent activity in the United States may be probative evidence of whether the authorities have a continued interest in him. In *Matter of M-A-F-*, 26 I&N Dec. at 655–56, we concluded that the date when a new asylum application is filed controls for the purposes of assessing the application's timeliness under section 208(b)(2)(B) of the Act, where the application presents a previously unraised basis for relief or is predicated on a new or substantially different factual basis. By contrast, to qualify for the "changed circumstances" exception under section 208(a)(2)(D), we clarify that the alleged change must be significant such that it materially affects an applicant's asylum eligibility.

The activity the respondent engaged in while in the United States— emailing Christian proselytizing messages to people in China—is substantially similar to the actions he undertook in China and represents a continuation of those religious activities without a significant change.[4] The fact that the respondent continued his proselytizing activities after he entered the United States (albeit through a different medium) does not support a finding of changed circumstances since it was this very activity (proselytizing) in China that led him to leave his country originally. The respondent does not allege that he became involved in new activities related to Christianity in the United States; nor does his activity in this country raise a claim for asylum under a separate protected ground or on the basis of a newly articulated claim of future persecution.[5] On the contrary, the respondent's present claim remains premised on the same fear of the Chinese authorities he possessed prior to coming to the United States, as well as the same protected ground, and therefore does not adequately set forth a change in the respondent's particular circumstances.

---

[4] Although the respondent testified that he sent many emails to China, he submitted a copy of only one email before the Immigration Judge.

[5] To the extent an applicant has a new claim, independent of the harm or fear of harm the applicant possessed upon entry into the United States, he or she may file a new application for asylum. *See Matter of M-A-F-*, 26 I&N Dec. at 655.

Further, while the emails the respondent distributed may have generated renewed interest from the authorities, the record does not reflect that the respondent's risk of persecution in China increased as a result of his email correspondence such that his claim to asylum, based on his activity in the United States, is significantly changed from his claim of past harm. In essence, it is the same claim he could have made during the 1-year period after he entered the United States. In fact, the respondent testified that the police were still trying to catch him after they discovered the emails he sent to people in China, and the police had inquired about his activities and location even before he left China. This testimony strongly supports the Immigration Judge's inference that the police's interest in and scrutiny of the respondent remained the same after he sent the emails, and his activity in the United States represented a mere continuation of his circumstances prior to his departure from China. *See Matter of D-R-*, 25 I&N Dec. at 453−54 (stating that an Immigration Judge may make reasonable inferences based on the record). Because the police's interest in the respondent existed before his departure from China, and continued after he left, the respondent has not shown that their interest in him has either significantly increased or intensified as a result of his actions in the United States. Consequently, we conclude that the respondent has not established his email activity in the United States "materially affect[ed]" his eligibility for asylum, as required under the Act and the regulations. Section 208(a)(2)(D) of the Act; 8 C.F.R. § 1208.4(a)(4)(i)(B).

In sum, we hold that the mere continuation of an activity in the United States that is substantially similar to the activity from which an initial claim of past persecution is alleged and that does not significantly increase the risk of future harm is insufficient to establish "changed circumstances" to excuse an untimely asylum application within the meaning of section 208(a)(2)(D) of the Act. Because we conclude that the respondent's continued religious activity in the United States has not been shown to constitute changed circumstances that materially affect his eligibility for asylum pursuant to 8 C.F.R. § 1208.4(a)(4)(i)(B), he has not met the requirements to excuse his untimely asylum application. Therefore, we will affirm the Immigration Judge's determination that the respondent's application for asylum is time-barred.

### B. Withholding of Removal

Although the respondent is precluded from applying for asylum, he remains eligible for withholding of removal under section 241(b)(3)(A) of the Act. To establish a claim for withholding of removal under this provision, the respondent must demonstrate past persecution or a clear

probability that his life or freedom would be threatened in China on account of, among other protected grounds, his religion. *See INS v. Stevic*, 467 U.S. 407, 421–22 (1984); 8 C.F.R. § 1208.16(b). "[P]ersecution is 'an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (citation omitted).

The Immigration Judge determined that the mistreatment the respondent experienced in China did not rise to the level of persecution. However, she set forth limited findings of fact and analysis in rendering this determination. Consequently, we conclude that further fact-finding is necessary. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2020) (limiting our fact-finding ability on appeal). Therefore, we will remand the record for the Immigration Judge to make further findings of fact and legal determinations, considering precedential decisions from the Second Circuit pertaining to whether the harm the respondent experienced in China rose to the level of past persecution or whether he has met his burden to show a clear probability of future persecution on account of a protected ground under the Act. *See, e.g.*, *Jian Qiu Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (discussing the standards for assessing persecution); *Beskovic v. Gonzales*, 467 F.3d 223, 227 (2d Cir. 2006) (remanding to allow the Immigration Judge to explain the basis of his decision, which did not permit the court to meaningfully review whether the correct legal standards had been applied); *see also* 8 C.F.R. § 1208.16(b)(1)–(2).

If past persecution is found, the Immigration Judge should further assess whether the Department of Homeland Security has rebutted the presumption of future persecution by demonstrating that there has been a fundamental change in circumstances or shown that the respondent can relocate to avoid such future harm and it is reasonable for him to do so. *See* 8 C.F.R. § 1208.16(b)(1)(i)(A)–(B), (ii). On remand, the parties should be afforded an opportunity to update the record with additional evidence pertinent to any outstanding issues and make any additional legal and factual arguments regarding the respondent's eligibility for withholding of removal. We express no opinion regarding the outcome on remand. Accordingly, the respondent's appeal from the Immigration Judge's decision denying his application for asylum is dismissed, and the record is remanded for further consideration of his eligibility for withholding of removal.

**ORDER:** The appeal is dismissed in part, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.