**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1479

_____

ELBER EUSTAQUIO YUMAN DAVILA,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Agency No. A216-429-991)
Immigration Judge: Jason L. Pope

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 17, 2022

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: December 12, 2022 )

_____

**OPINION**[*]

_____

BIBAS, *Circuit Judge*.

Though immigration authorities must show their work in removal proceedings, they

need not mention every piece of evidence. We will thus dismiss in part and deny in part

this petition for review.

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

## I. BACKGROUND

Elber Eustaquio Yuman Davila is from Guatemala, where he was a truck driver. He attracted attention from a gang, which extorted money from him weekly. A gangster once put a knife to his ribs and threatened to stab him unless he paid up. Though he tried to avoid the gang, its members kept harassing him for more money.

Eventually, Yuman Davila traveled to his aunt's home in the capital. Taking her advice, he reported the gang's extortion to both the public ministry and the police. Days later, the gangsters left a letter for him at her house, saying they knew where he was.

Frightened, Yuman Davila called the gangsters and warned them that he had reported them to the police. In response, they "became furious" and "said that they would kill" him. AR 55. After he returned to his hometown, the gang kept looking for him.

Yuman Davila came to America about a year later, in June 2018. He overstayed his work visa and was arrested after a traffic incident. The next month, immigration authorities started removal proceedings. He conceded that he was removable but sought asylum, withholding of removal, and Convention Against Torture protection. The immigration judge found him credible but denied all three types of relief. The Board of Immigration Appeals dismissed his appeal.

When the Board's decision adopts the immigration judge's, we review both. *Doe v. Att'y Gen.*, 956 F.3d 135, 141 (3d Cir. 2020). We review factual findings for substantial evidence and legal conclusions de novo. *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020).

## II. We Lack Jurisdiction to Review His Asylum Claim

For asylum, Yuman Davila had to apply within a year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). He did not. But he says we should still consider his late application because of "changed circumstances" that "materially affect" his eligibility. § 1158(a)(2)(D). Circumstances changed, he says, when his family told him in June 2021 that the gangsters were still looking for him.

Yet Yuman Davila did not show that the gang's interest in him "either significantly increased or intensified," so the immigration judge and the Board rejected his argument. AR 4, 58–60. We lack jurisdiction to review that decision. § 1158(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 633–35 (3d Cir. 2006). And despite his efforts, he has not shown that the Board made a legal mistake over which we have jurisdiction. *See* § 1252(a)(2)(D). The Board properly applied the "principles govern[ing]" the changed-circumstances inquiry. *See In re D-G-C-*, 28 I&N Dec. 297, 300–02 (B.I.A. 2021), *cited in* AR 4. We will thus dismiss this part of his petition.

## III. His Withholding Claim Fails

For withholding of removal, Yuman Davila must show that he belonged to a cognizable "particular social group" and that "his membership in the group is one central reason why he was or will be targeted for persecution." 8 U.S.C. § 1231(b)(3)(A); *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015) (internal quotation marks omitted). He proposes two social groups. But the first one does not count, and his membership in the second was not a "central reason" for his persecution.

3

**A. Resisting extortion cannot define a cognizable social group**

Yuman Davila's first proposed group is "Guatemalan males who resist extortion by street gangs." AR 61. But that group is not cognizable because it does not "exist independently" of the extortion: a group "cannot be created by the alleged underlying persecution." *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003). Thus, his claim that the immigration judge and the Board misapplied *Lukwago* fails. *Compare id.* at 174–75 (distinguishing a non-cognizable group of abducted child soldiers from a cognizable group of those child soldiers who escaped), *with* Reply Br. 14–17 & n.8.

**B. Reporting the gang to the police was not a central reason for his persecution**

The immigration judge found that Yuman Davila belonged to a cognizable social group of those "who have publicly assisted law enforcement against violent gangs in Guatemala." AR 60–61. He also found that Yuman Davila had been persecuted. But he concluded that these two things were not closely related: Yuman Davila's membership in that group "was not one central reason" for his persecution. AR 61. He had been threatened for money, not for helping the police. The Board agreed.

So do we. There is substantial evidence that "an essential or principal reason" that the gangsters threatened Yuman Davila was money, not to punish him for reporting them to the police. *Gonzalez-Posadas*, 781 F.3d at 685–86; *Thayalan v. Att'y Gen.*, 997 F.3d 132, 142–44 (3d Cir. 2021). He concedes that he was "initially victimized for financial reasons." Reply Br. 5 n.2. And as the immigration judge explained, neither the level of violence nor the nature of the threats changed. Before he ever complained to the police, the gangsters threatened him with a knife for money; after his complaint, they kept demanding money.

True, after he called them and mentioned his complaint to the police, they grew "furious" and threatened to kill him. AR 55. So "other interpretations of the record are certainly possible." *Gonzalez-Posadas*, 781 F.3d at 687. But "substantial evidence [still] supports the agency's determination" that his helping the police was not a central reason for his persecution. *Id.*

Fighting this conclusion, Yuman Davila argues that both the immigration judge and the Board procedurally erred. He says they disregarded his testimony that the gangsters "became furious" and "swore they would retaliate" when he told them that he had complained to the police. Pet'r's Br. 21 (quoting AR 168, 333). But they did not disregard this testimony. The immigration judge acknowledged that he had "told the gang members that he had reported them to law enforcement" and explained that the continuing threats were about money. AR 61. The Board did likewise. They need not go further to "expressly parse each point or discuss each piece of evidence presented." *Fei Yan Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014).

Yuman Davila also asserts that the immigration judge and the Board should have analyzed whether there is a "pattern or practice" of persecuting those who help the police against gangs. Pet'r's Br. 25–27 (quoting 8 C.F.R. § 1208.13(b)(2)(iii)). But because he never made that argument to the Board, he has failed to exhaust this issue. *See Lin v. Att'y Gen.*, 543 F.3d 114, 119–22 (3d Cir. 2008); *Thayalan*, 997 F.3d at 144 n.5. We thus cannot review it. 8 U.S.C. § 1252(d)(1); *see also Lin*, 543 F.3d at 119–22.

## IV. His Convention Against Torture Claim Fails Too

Finally, for his Convention claim, Yuman Davila must show that he would more likely than not be tortured upon returning to Guatemala and that the Guatemalan government would acquiesce to his torture. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515–16 (3d Cir. 2017). Though he disputes it, the immigration judge and the Board properly rejected his claim of governmental acquiescence. First, they found that public officials would likely address his reports. That finding is supported by substantial evidence: the Guatemalan police previously helped him and other victims of extortion. *See Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 92–93 (3d Cir. 2021). And second, they correctly concluded that this response would not be acquiescence. "[A]s a matter of law, the [Guatemalan] government's likely response to future reports of crime—taking a report and commencing an investigation— does not constitute acquiescence." *Id.* That conclusion defeats Yuman Davila's Convention claim. *Id.*

\* \* \* \* \*

Because we lack jurisdiction to review Yuman Davila's asylum claim, we will dismiss that part of his petition. And because his withholding and Convention claims fail on the merits, we will deny the rest.