[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12607

Non-Argument Calendar

_____

ALEYDA EVELYN VANEGAS HERNANDEZ,
MELI JUDITH VILLATORO VANEGAS,

                                              Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                              Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-849-208

_____

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Aleyda Evelyn Vanegas Hernandez petitions this court for review of the Board of Immigration Appeals's decision dismissing Vanegas Hernandez's appeal of the immigration judge's order. The Board denied relief under the Convention Against Torture ("CAT") because the claim was waived, and it denied her applications for asylum and withholding of removal because her proposed particular social group was not cognizable. After careful review, we dismiss the petition in part and deny it in part.

## FACTUAL BACKGROUND

Vanegas Hernandez is a Salvadoran citizen seeking asylum, withholding of removal, and CAT relief for herself and her minor daughter, M.V. Vanegas Hernandez left her native country to escape abuse at the hands of Jose Maria Rey, her former partner and the father of her first three children.

Rey began abusing Vanegas Hernandez two years into their relationship, after she gave birth to their second child. Eventually, Vanegas Hernandez left Rey and took her three children to live with her parents. She then married another man, Francisco Evelio Villatoro Reyes, and she became pregnant with M.V. During that pregnancy, Rey called her, threatening "he was never going to let [her] be happy." Rey later confronted Vanegas Hernandez while she washed clothes by a river, threw a machete at her, and cut her

leg.  He threatened to kill her and take her children if she reported him to the police.  Ultimately, she did not report his abuse to the police, but she discussed it with Reyes and decided she would leave El Salvador and take M.V. to the United States.  Upon arrival, the Department of Homeland Security charged them as removable for lack of valid entry documents, and Vanegas Hernandez filed for asylum, withholding of removal, and CAT relief.

## PROCEDURAL HISTORY

At a merits hearing before an immigration judge, Vanegas Hernandez argued that the facts asserted in her application showed past persecution and that she would be persecuted in the future if she returned because of her membership in a particular social group.  The group she asserted was "Salvadoran wom[e]n in a domestic relationship with another or a second man with children born out of a relationship with the first man" who "regard[s] [the women] as property."  Vanegas Hernandez argued that because of Rey's past abuse and threats to kill her, she feared being subject to torture by him in El Salvador because she claimed women who are beaten by their partners or husbands are not protected by the police in El Salvador.  In support, she filed the El Salvador Human Rights Report from the United States Department of State, the El Salvador Crime and Safety Report from the Overseas Security Advisory Council, and internet news articles describing human rights conditions and violence against women in El Salvador.  Those documents evinced that Salvadoran law criminalized rape (including spousal rape, at the judge's discretion), sexual

harassment, and domestic violence, but that women were often still victims with "the rate of cases involving violence against women [at] 5,999 per 100,000 inhabitants" in 2017. The reports also demonstrated that Salvadoran women suffered from gang violence, intrafamilial violence, and sex crimes (including at least two incidents involving law enforcement officers).

The immigration judge denied Vanegas Hernandez's application. The immigration judge found that Vanegas Hernandez's allegations were credible and that she had established past persecution based on Rey abusing her for nearly a decade. But, relying on *Matter of A-B-*, the immigration judge found that the proposed particular social group was not cognizable because "it lack[ed] the requisite social distinction." *See A-B-*, 28 I. & N. Dec. 307, 308 (2021) (*A-B-I*). And the immigration judge also found the proposed group was not cognizable because it was "defined by the harm that [Vanegas Hernandez] would suffer." The immigration judge concluded she could not meet the high burden for asylum—nor meet the even higher burden for withholding of removal. The immigration judge also concluded that there was no testimony that Vanegas Hernandez or her daughter would be tortured by, or with acquiesce from, a Salvadoran government official if they returned to El Salvador. So she was ineligible for CAT relief too.

Vanegas Hernandez appealed to the Board. In her notice of appeal, she argued that she was eligible for CAT relief based on her testimony and the State Department report on El Salvador she filed, which she claimed "shows the government of El Salvador is

aware, and acquiesces, by willful blindness and failure of its legal responsibility to intervene and prevent [torturous] activity against persons in [her] position." She also argued that she merited asylum and withholding of removal because of her fear of future persecution based on her membership in the particular social group. But in her brief to the Board, Vanegas Hernandez only developed the particular social group argument; she merely mentioned CAT relief in her statement of facts outlining the issues for the appeal.

The Board dismissed Vanegas Hernandez's appeal. It first determined that she "did not meaningfully challenge" the immigration judge's CAT relief denial, so it "deem[ed] the issue waived." The Board next acknowledged that *A-B-I* had been vacated, but explained that, relying "solely on current law," no remand was required because Vanegas Hernandez's proposed particular social group was circularly defined, and thus, not cognizable. Vanegas Hernandez now petitions for review.

## STANDARD OF REVIEW

We review the Board's decision and the immigration judge's opinion to the extent the Board "expressly adopted the immigration judge's opinion." *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1321 (11th Cir. 2021). When the Board explicitly agrees with the findings of the immigration judge, we review both decisions on those issues. *Jeune v. U.S. Att'y. Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review legal questions de novo and findings of fact for substantial evidence. *Farah*, 12 F.4th at 1321.

## DISCUSSION

Vanegas Hernandez's petition raises two issues: (1) whether the Board properly denied the CAT relief claim; and (2) whether the Board properly denied her asylum and withholding of removal claims. We address each issue in turn.

### The CAT relief claim

First, we address the CAT relief claim. "When an appellant fails to offer argument on an issue, that issue is abandoned." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (collecting cases). This is no less true for a CAT relief claim. *See id.* (holding that the petitioner abandoned her challenge where she "d[id] not raise any challenge in her brief to the denial of relief under the Convention Against Torture (CAT)"); *Hasan-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831, 843 n.2 (11th Cir. 2022) (holding petitioner "d[id] not challenge the denial of his application for CAT relief and has therefore abandoned this issue" (citing *Sepulveda*, 401 F.3d at 1228 n.2)). The Board dismissed Vanegas Hernandez's CAT relief claim after it found she waived the issue by failing to meaningfully challenge the immigration judge's denial. *See D-G-C-*, 28 I. & N. Dec. 297, 297 n.1 (BIA 2021) (noting issues not meaningfully challenged on appeal are considered waived).

On review to us, Vanegas Hernandez argues the Board improperly dismissed her CAT relief claim because her evidence of past persecution—combined with the evidence she submitted about conditions in El Salvador—"compel a finding that she would more likely than not be tortured." But this argument speaks to the

*merits* of her claim, not the *exhaustion* ground upon which the Board dismissed her claim.  Because she developed no argument showing she did not waive her CAT relief claim, we dismiss this part of her petition as unexhausted.

### The asylum and withholding of removal claims

Second, we address the asylum and withholding of removal claims.  A noncitizen may be granted asylum as a refugee if she shows she "is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of," her country of nationality "because of persecution or a well-founded fear of persecution" on account of her membership in a cognizable particular social group.  8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A); *see also Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1307 (11th Cir. 2019).

To establish a cognizable particular social group, the noncitizen must show that it is:  "(1) composed of 'a group of persons all of whom share a common, immutable characteristic'; (2) 'defined with particularity'; and (3)'socially distinct within the society in question.'"  *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 989 (11th Cir. 2020) (quotations omitted).  The immutable characteristic 'must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'"  *Perez-Zenteno*, 913 F.3d at 1309 (quoting *Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)).  But not "every 'immutable characteristic' is sufficiently precise to define a particular social group."  *A-R-C-G-*, 26 I. & N. Dec. 388, 392 (BIA 2014).  And the group must "be discrete and have definable

boundaries--it must not be amorphous, overbroad, diffuse, or subjective." *M-E-V-G-*, 26 I. & N. Dec. 227, 240 (BIA 2014). Further, social distinction requires social recognition, meaning a particular social group need not be "'ocularly' visible" to society but "it must be *perceived* as a group by society." *Id.* at 240 (quotation omitted). And while the perception of the noncitizen's persecutors "may be relevant, because it can be indicative of whether society views the group as distinct," it "is not itself enough to make a group socially distinct, and persecutory conduct alone cannot define the group." *Id.* at 242; *see also Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006) (noting that particular social groups "should not be a catch-all for all persons alleging persecution who do not fit elsewhere," so the "risk of persecution alone does not create a particular social group within the meaning of the [Immigration and Nationality Act]").

The Board concluded Vanegas Hernandez's proposed particular social group, "Salvadoran Women in a Domestic Relationship with Another or a Second Man with Children Born out of the First Relationship with Another or First Man and that this Salvadoran Woman Would be Viewed by that First Man as Property," was not cognizable because the group was circularly defined by the risk of persecution that its members would face. We agree.

To define her proposed particular social group, Vanegas Hernandez included the characteristic "Salvadoran Woman Would be Viewed by that First Man as Property." But this does not work. Neither the persecutor's perception nor conduct can

define a particular social group on its own. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242. And while Vanegas Hernandez also included in her proposed particular social group definition "Salvadoran Woman in a Domestic Relationship with Another or a Second Man with Children Born out of the First Relationship with Another or First Man," this cannot save her because she presented no evidence in support of this characteristic.

Vanegas Hernandez evinced high rates of domestic violence and rape in El Salvador. She also proffered as evidence articles describing El Salvador's "patriarchal social structure," violent gang culture, and high levels of intrafamilial violence. But none of these makes any distinction between violence against—or society's perception of—women *in a domestic relationship with another or a second man with children born out of the first relationship with another or first man* and women *in general*. *See Alvarado,* 984 F.3d at 992 (concluding a proposed particular social group of "Honduran women who are viewed as property" was not cognizable when the noncitizen only presented evidence "that, because of a culture of machismo in Honduras, *all* Honduran women (and their children) are perceived as property of their husbands and fathers"); *Perez-Zenteno*, 913 F.3d at 1309–10 (finding a report that criminal groups targeting citizens, migrants, journalists, and human rights defenders "[i]n no way . . . support[ed] the idea that Mexican citizens who traveled to the United States and who had family members who lived in the United States somehow were socially distinct or uniquely targeted for abuse").

The *only* evidence that distinguishes violence or subordination of women in general to that of women in a domestic relationship with another or a second man with children born out of the first relationship with another or first man is Vanegas Hernandez's account of personal abuse at the hands of her persecutor, Rey. But again "a social group cannot be defined exclusively by the fact that its members have been subjected to harm." *See A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 74 (BIA 2007); *see also Alvarado*, 984 F.3d at 992 ("To the extent [the noncitizen] intends 'viewed as property' to mean treated as property by her domestic partner and thus mistreated, her definition lacks a 'narrowing characteristic' other than the risk of persecution and is impermissibly circular." (citing *Perez-Zenteno*, 913 F.3d at 1309–10)); *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (finding a proposed particular social group was not cognizable when "the defining attribute . . . [wa]s its persecution by the drug-trafficking organization, and the 'risk of persecution alone does not create a particular social group.'" (quotation omitted)).

Vanegas Hernandez argues the Board and immigration judge did not give reasoned consideration to her particular social group. Vanegas Hernandez contends the Board "fail[ed] to adequately explain its rejection of logical conclusions." *Id.* Specifically, she argues the immigration judge "relied heavily" on the vacated *A-B-I* decision instead of analyzing the proposed particular social group under the facts presented in this case and in the context of the society where the claim arose. And that by affirming the immigration judge's opinion without discussion of the particular

circumstances, the Board "viewed the circularity objection as categorical" despite there being no "blanket rule foreclosing any domestic violence or gang violence." This is not so.

When an immigration judge's or the Board's decision "is so lacking in reasoned consideration and explanation that meaningful review is impossible, we have granted petitions for review, vacated agency decisions, and remanded for further proceedings." *Jeune*, 810 F.3d at 803. The agency is required to consider all evidence, but it need not address specifically each claim made or piece of evidence presented. *Id.* In short, the agency fails to give reasoned consideration "when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 803.

It is true, as the Board acknowledged, the immigration judge "relied on *A-B-[I]* . . . in denying the [requested] relief from removal," and "the Attorney General vacated *A-B-[I]*" after the immigration judge issued the initial decision. But the immigration judge made two findings: the proposed particular social group was not cognizable because (1) it "lack[ed] the requisite social distinction . . . [as] described or discussed in *Matter of A-B-[I]*"; *and* (2) because it was "defined by the harm that the respondent would suffer based upon her membership in that group." The Board affirmed the immigration judge's finding only on the latter, determining that the proposed particular social group was "impermissibly circular, as defined." The principle that a particular social group

cannot be defined by its member's risk of persecution has been around long before *A-B-I*. *See, e.g., Rodriguez*, 735 F.3d at 1310 ("The risk of persecution alone does not create a particular social group within the meaning of the INA."); *A-M-E- & J-G-U-*, 24 I. & N. Dec. at 74 ("[A] social group cannot be defined exclusively by the fact that its members have been subjected to harm."); *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242 ("[P]ersecutory conduct alone cannot define the group."); *Castillo-Arias*, 446 F.3d at 1198 ("The risk of persecution alone does not create a particular social group within the meaning of the [Immigration and Nationality Act.]"). The vacated *A-B-I* did not create this precedent nor did the *A-B-I* vacatur disturb this precedent.

Indeed, when the Attorney General vacated *A-B-I*, it acknowledged that "[p]ortions of the discussion in *A-B-I* were framed as a restatement and application of existing Board precedent." *Matter of A-B-*, 28 I. & N. Dec. at 308. But it concluded *Matter of A-B-I*'s "broad statement that 'victims of private criminal activity' will not qualify for asylum except perhaps in 'exceptional circumstances,'" erroneously "create[d] a strong presumption against asylum claims based on private conduct" and "discourage[d] careful case-by-case adjudication of asylum claims." *Id.* So it vacated *A-B-I* and instructed the Board and courts to return to "pre-*A-B-I* precedent, including *Matter of A-R-C-G-*." *Id.*

In *A-R-C-G-*, the Board acknowledged that circuit courts "have long recognized that a social group must have 'defined boundaries' or a 'limiting characteristic,' other than the risk of

being persecuted" but concluded the proposed particular social group of "married women in Guatemala who are unable to leave their relationship" was "*not* defined by the fact that the applicant [wa]s subject to domestic violence." *A-R-C-G-*, 26 I. & N. Dec. at 396 (quoting parenthetically *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014)). In doing so, the Board pointed out "that a married woman's inability to leave the relationship may be informed by societal expectations about gender and subordination, as well as legal constraints regarding divorce and separation." *Id.* at 393. And it found it significant that the noncitizen "sought protection from her spouse's abuse [but] that the police refused to assist her because they would not interfere in a marital relationship." *Id.* In essence, the noncitizen's claim there was that she would be subject to continuous abuse by her husband because she was unable to leave him, *not* that she was unable to leave her husband *because* he abuses her. *See Matter of A-R-C-G-*, 26 I. & N. Dec. at 393. The opposite is true in this case.

## CONCLUSION

In sum, a case-by-case analysis, as required by pre-*A-B-I* precedent, shows that Vanegas Hernandez's proposed particular social group was circularly defined by the harm its members would face. Because her particular social group was not cognizable, that part of her petition is due to be denied.

**PETITION DISMISSED IN PART AND DENIED IN PART.**